**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>JAMES A. SANTOS,<br><br>Defendant - Appellant. | No. 09-10332<br><br>D.C. No. 1:08-cr-00020-ARM-4<br><br>MEMORANDUM* |
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>JOAQUINA V. SANTOS,<br><br>Defendant - Appellant. | No. 09-10334<br><br>D.C. No. 1:08-cr-00020-ARM-3 |
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v. | No. 09-10335<br><br>D.C. No. 1:08-cr-00020-ARM-1 |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

TIMOTHY P. VILLAGOMEZ,

  Defendant - Appellant.

UNITED STATES OF AMERICA,                    No. 09-10374

  Plaintiff - Appellant,                     D.C. No. 1:08-cr-00020-ARM-1

  v.

TIMOTHY P. VILLAGOMEZ,

  Defendant - Appellee.

Appeal from the United States District Court
for the District of the Northern Mariana Islands
Alex R. Munson, Chief District Judge, Presiding

Argued and Submitted June 12, 2012
Honolulu, Hawaii

Before: SCHROEDER, CALLAHAN, and N.R. SMITH, Circuit Judges.

Defendants Timothy Villagomez ("Villagomez"), James Santos ("Santos")

and Joaquina Santos ("Mrs. Santos") (collectively, "Defendants") were charged

with conspiracy to defraud the United States, wire fraud, theft from a program

receiving federal funds, and bribery concerning a program receiving federal funds.

Villagomez was formerly the Lieutenant Governor of the Commonwealth of the

Northern Mariana Islands ("CNMI"), and Santos was formerly the Secretary of Commerce of the CNMI. Together with Mrs. Santos, Villagomez and Santos conspired to commit fraud in connection with CNMI's purchase of a chemical solvent called Rydlyme from companies Santos and Mrs. Santos owned. On appeal, the Defendants contend that they were deprived of their right to a public trial when the public was excluded from the courtroom during voir dire. They also contend that the district court abused its discretion by denying their post-trial motion for an evidentiary hearing on their allegations of juror bias. The Government contends on cross-appeal that the district court erred in calculating Villagomez's Sentencing Guidelines range. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in part.[1]

**1.** The Defendants forfeited their right to a public trial by failing to timely object to the closure of the courtroom during voir dire. *See Peretz v. United States*, 501 U.S. 923, 936 (1991); *Levine v. United States*, 362 U.S. 610, 619 (1960); *United States v. Rivera*, 682 F.3d 1223, 1232 (9th Cir. 2012) ("[A] defendant may nevertheless forfeit the right [to a public trial], either by affirmatively waiving it or by failing to assert it in a timely fashion."). The

---

[1] Because the parties are familiar with the facts and procedural history, we restate them only as necessary to explain our decision.

3

government has consistently argued forfeiture and the district court did not address it, instead focusing on whether it was proper to hold a hearing under Federal Rule of Appellate Procedure Rule 10(e).

Here, the defendants did not object to any closure during voir dire and did not complain about the total closure of the courtroom during voir dire until more than a year after trial. The defendants, however, knew or should have known of any closure at the time it happened. The defendants produced seven affiants who swore that they were excluded from the courtroom during voir dire, and the defendants themselves were present in the courtroom during voir dire. The defendants' lawyers also knew or should have known of the closure, especially given their statements at the April 14, 2010, hearing on bail pending appeal that the "voir dire part of the trial was completely closed" and "not a single member of the public was allowed during the voir dire."[2]

Where a defendant forfeits a claim by failing to raise it in a timely manner, we review for plain error. *United States v. Olano*, 507 U.S. 725, 731, 733 (1993); *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc). Even

---

[2] Because the Defendants forfeited their objection to the courtroom closure, the district court should not have held the Rule 10(e) hearing. Accordingly, we do not consider any of the district court's findings of fact resulting from that hearing in this part of our analysis.

assuming that the first three elements of the plain error test are met—*i.e.*, that the proceedings involved error, the error is plain, and the error affected the Defendants' substantial rights—we have "the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation marks omitted); *see also Johnson v. United States*, 520 U.S. 461, 466 (1997). We decline to exercise that discretion here because the Defendants point to nothing in the record suggesting that closure led to any unfairness in the jury selection or deviation from established procedures, affected the public interest in the administration of justice, or somehow made the jurors less attuned to their sense of responsibility or the importance of their function. *See Johnson*, 520 U.S. at 470; *Press-Enter. Co. v. Superior Court of Cal., Riverside Cnty.*, 464 U.S. 501, 508-09 (1984).

2.      Even if the Defendants had not forfeited their objection to the closure of the courtroom during voir dire, that objection would not be persuasive. Assuming without deciding, for purposes of this analysis, that the district court's Rule 10(e) factual findings in the Settling Order were appropriate, the Defendants have not made the requisite showing of an affirmative courtroom closure for a non-trivial duration. *See United States v. Shryock*, 342 F.3d 948, 974 (9th Cir. 2003) (a

5

defendant must show not mere closure, but that it was closed affirmatively, completely, and pursuant to judicial act or order); *see also United States v. Rivera*, 682 F.3d 1223, 1229 (9th Cir. 2012) (when a closure is trivial, "exclusion of members of the public from a judicial proceeding does not implicate the constitutional guarantee"); *United States v. Withers*, 638 F.3d 1055, 1063 (9th Cir. 2011) (a courtroom closure must be total and of significant duration); *United States v. Ivester*, 316 F.3d 955, 959-60 (9th Cir. 2003) (holding that some closures are too trivial to implicate the Sixth Amendment right to a public trial). Here, the Settling Order reveals that the closure occurred not because of an affirmative court order,[3] but because the large pool of prospective jurors occupied every available seat in the small courtroom, at least during the first day of voir dire. The Settling Order also makes no findings regarding the duration of the closure, except that it was no longer than during voir dire, which occurred over the afternoon of one day and the morning of the next. Thus, even accepting the findings in the district court's Rule 10(e) Settling Order, the Defendants have not met their burden of demonstrating that the closure was non-trivial.

---

[3] The settling judge found there was no order to exclude members of the public during jury selection.

**3.** The district court properly denied the Defendants' post-trial motion for an evidentiary hearing due to alleged juror bias. To demonstrate actual bias, the Defendants must show that: (1) "a juror failed to answer honestly a material question on *voir dire*," and (2) "a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *Estrada v. Scribner*, 512 F.3d 1227, 1240 (9th Cir. 2008). Here, the district court did not clearly err in finding that the jurors were honest in their answers about their relationships with the Defendants, attorneys, and witnesses when asked. The record shows that the jurors who were related, albeit distantly, to some of the witnesses answered the questions asked of them honestly. The defense attorneys could have requested further inquiry, but they did not. *Cf. Sanders v. Lamarque,* 357 F.3d 943, 947-50 (9th Cir. 2004) ("[T]he record demonstrates that any failure by the prosecution to discover information regarding [juror's background] was due to its own lack of diligence and not any concealment or deliberate withholding of information by [the juror]."). Moreover, even if the Defendants could establish that the jurors' answers were dishonest, they failed to show that an honest answer regarding the familial relationships would have supported a challenge for cause.

Implied bias is found in only "extraordinary cases" based on all the relevant circumstances. *Dyer v. Calderon*, 151 F.3d 970, 981 (9th Cir. 1998). No extraordinary circumstances exist here: (a) no court has presumed bias based on familial relationships alone; (b) the jurors answered accurately and honestly the questions asked of them and pledged under oath that they could impartially weigh the evidence; and (c) the Defendants did not allege that the jurors knew of these familial relationships or even that the jurors knew the witnesses personally. *Cf. Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007) (holding that a juror's failure to volunteer details when he was not asked a specific question does not imply intentional dishonesty). Without something more, these are not "extreme circumstances" warranting presumed bias.

4. The district court erred in finding that a four-level increase for Villagomez for participating in high-level public corruption would be double counting when combined with his base level of 14, which was based on his status as a public official. In calculating the Sentencing Guidelines range, "double counting" is allowed when the increases account for distinct harms. *United States v. Holt*, 510 F.3d 1007, 1012 (9th Cir. 2007). As opposed to the base-level for all public officials, U.S.S.G. § 2C1.1(b)(3) applies a 4-level increase to *all* defendants involved in a crime of high-level corruption, whether a public official or otherwise.

8

Thus, the distinct harm at which § 2C1.1(b)(3) is aimed is the corruption of high-level public officials as distinct from an individual official's breach of the public trust.

For the foregoing reasons, we **AFFIRM** the district court with respect to the Defendants' appeals, and we **VACATE** Villagomez's sentence and **REMAND** for new sentencing proceedings consistent with this disposition.

*United States v. Santos*, 09-10332, 09-10334, 09-10335, 09-10374

**N.R. SMITH**, Circuit Judge, concurring in part and dissenting in part:

I concur in all but part two of the majority's disposition. I disagree that the courtroom closure, which occurred during the entirety of voir dire over the course of two days, was of a non-trivial duration. A courtroom closure that lasts for the entire jury selection process cannot be deemed trivial. *See, e.g.*, *Owens v. United States*, 483 F.3d 28, 63 (1st Cir. 2007) ("[T]his was not a mere fifteen or twenty-minute closure; rather [the defendant's] trial was allegedly closed to the public for an entire day while jury selection proceeded."); *United States v. Gupta*, 699 F.3d 682, 685, 689 (2d Cir. 2012) ("the district court's intentional, unjustified exclusion of the public for the entirety of voir dire [lasting less than one day] was neither brief nor trivial, and thus violated [defendant's] Sixth Amendment right to a public trial.").