2015 CO 48

**James Robert STACKHOUSE, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent**

**Supreme Court Case No. 12SC1029**

Supreme Court of Colorado.

June 29, 2015

Attorneys for Petitioner: Douglas K. Wilson, Public Defender, Elizabeth Porter-Merrill, Deputy Public Defender, Denver, Colorado

Attorneys for Respondent: Cynthia H. Coffman, Attorney General, Erin K. Grundy, Assistant Attorney General, Denver, Colorado

CHIEF JUSTICE RICE delivered the Opinion of the Court.

¶ 1 In this case, we granted certiorari to consider whether the court of appeals erred in concluding that the defendant waived his public trial claim by failing to object to the closure of the courtroom during jury selection. This question turns largely on whether our precedent in Anderson v. People, 176 Colo. 224, 490 P.2d 47, 48 (1971)—holding that a defendant affirmatively waives his public trial right by not objecting to a known closure of the courtroom—remains controlling precedent, or whether it has been abrogated by the more recent United States Supreme Court decisions in Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), and Presley v. Georgia, 558 U.S. 209, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010) (per curiam). Because Waller and Presley relate only to closures that elicit contemporaneous objections from defense counsel, and because the rationale supporting Anderson remains sound, Anderson is still controlling precedent and remains good law in Colorado. We therefore affirm the court of appeals' judgment.

## I. Facts and Procedural History

¶ 2 The People charged Petitioner James Robert Stackhouse with sexual assault on a child, sexual assault on a child by a person in a position of trust, and sexual assault on a child as a pattern of sexual abuse. At trial, the court required members of the public to

leave the courtroom during jury selection because the large jury pool and limited courtroom space created a risk that family members and others would comingle with and potentially bias the jurors. After explaining his reasoning for the closure, the trial judge asked the attorneys if they had "anything further," and Stackhouse did not object to the closure at that point or at any point during trial. Stackhouse was subsequently tried and was convicted of the first two counts, acquitted of the pattern count, and sentenced to ten years to life. He subsequently appealed his conviction.

¶ 3 Despite not objecting to the closure at trial, Stackhouse asserted on appeal that the court's exclusion of the public during jury selection without satisfying the four elements established in Waller constituted structural error mandating automatic reversal under Presley. People v. Stackhouse, 2012 COA 202, ¶ 7, — P.3d ——. The court of appeals disagreed, holding that although denial of public voir dire over a defendant's objection constitutes structural error if the court does not satisfy the Waller test, even structural errors are subject to the doctrine of waiver, and Stackhouse waived his right to a public voir dire by not objecting to the closure. Id. at ¶¶ 9–10 (citing Anderson, 490 P.2d at 48). We granted Stackhouse's petition for certiorari to determine whether the court of appeals erred by relying on our precedent in Anderson in light of the United States Supreme Court's decisions in Waller and Presley.[1]

## II. Standard of Review

¶ 4 Whether Stackhouse waived his public trial claim by not objecting to the known closure is a question of law, and we review such questions de novo. Kazadi v. People, 2012 CO 73, ¶ 11, 291 P.3d 16, 20.

## III. Analysis

¶ 5 We hold that the court of appeals did not err: Anderson has not been abrogated by more recent United States Supreme Court decisions and remains controlling precedent. Although the United States Supreme Court's precedent on the right to a public trial has evolved since the case was decided, Anderson remains legally sound. Thus, we affirm the court of appeals' holding that Stackhouse waived his right to public trial during voir dire by not objecting to the trial court's known closure.

¶ 6 We begin by discussing the public trial right generally and Anderson specifically, and we then demonstrate that Anderson does not conflict with United States Supreme Court authority.

### A. The Right to Public Trial and Anderson's Waiver Principle

¶ 7 Both the United States and the Colorado Constitutions guarantee criminal defendants the right to a public trial. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16. It is well settled that a criminal defendant's constitutional right to a public trial extends to the jury selection process. Presley, 558 U.S. at 213, 130 S.Ct. 721. Under Waller, the public trial right is violated when a defendant objects to a closure and the court does not satisfy the four factors of the Waller test. 467 U.S. at 48, 104 S.Ct. 2210. Such a violation is structural error that requires automatic reversal without individualized prejudice analysis.[2] See Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (noting that "we have found an error to be 'structural,' and thus subject to automatic reversal, only in a very

1. Specifically, we granted certiorari to review the following issue: "Whether the court of appeals erred in concluding that the defendant waived his public trial claim by failing to object to the closure of the courtroom during jury selection."

2. We note that "automatic reversal" of the lower court's decision does not necessarily mean that the defendant automatically receives a new trial; rather, such a determination depends on the point at which the public was excluded. See Waller, 467 U.S. at 50, 104 S.Ct. 2210 (considering a public trial violation that occurred during a suppression hearing and remanding for a new suppression hearing that was open to the public because "the remedy should be appropriate to the violation" and "[i]f, after a new suppression hearing, essentially the same evidence is suppressed, a new trial presumably would be a windfall for the defendant, and not in the public interest").

limited class of cases," and citing Waller as including denial of public trial within the class of structural errors (internal quotation marks omitted)); accord Hagos v. People, 2012 CO 63, ¶ 10, 288 P.3d 116, 119 ("[C]ertain errors are structural errors, which require automatic reversal without individualized analysis of how the error impairs the reliability of the judgment of conviction. Examples of these errors include ... denial of the right to a public trial." (citations omitted)); People v. Hassen, 2015 CO 49, ¶ 18, 351 P.3d 418 (stating that "[w]hen the trial court closes the courtroom over a defendant's objection, it must satisfy the four Waller factors," then determining that the factors were not satisfied and thus remanding for a new trial). Nevertheless, the right to a public trial is not absolute, but rather "may give way ... to other rights or interests" even over a defendant's objection. Waller, 467 U.S. at 45, 104 S.Ct. 2210; id. at 48, 104 S.Ct. 2210 (describing four factors that must be met to close the courtroom over a defendant's objection).

¶ 8 Furthermore, even fundamental rights can be waived, regardless of whether the deprivation thereof would otherwise constitute structural error. See Peretz v. United States, 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) ("The most basic rights of criminal defendants are ... subject to waiver."). "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Here, we examine the particularities of the public trial right.

¶ 9 Under Anderson, a defendant affirmatively waives his public trial right when he does not object to a known closure. 490 P.2d at 48. In that case, we considered a factual scenario almost identical to that before us now—the whole spectator area of the courtroom was needed to seat the jury pool, and the bailiff restricted access so as to "segregate prospective jurors from witnesses, relatives, and other individuals whose proximity, conversation, or actions might cause the jury to be contaminated to the prejudice of the defendant or the prosecution." Id. On these facts, we held that "any right the defendant may have had to object to the exclusion of the public from the courtroom during the selection of the jury was waived" when defense counsel did not object despite being aware of the closure. Id. This has been the law in Colorado since we decided Anderson in 1971. See, e.g., People v. Dunlap, 124 P.3d 780, 818–19 (Colo.App.2004) (applying Anderson's waiver principle).

¶ 10 Therefore, because Stackhouse was aware of the closure and did not object to it, Anderson would appear to resolve his appeal.[3] Stackhouse argues, however, that Anderson is no longer valid in light of more recent Supreme Court authority. We now address this contention.

### B. Anderson Remains Controlling Precedent

¶ 11 Anderson's holding that a defendant waives his public trial right by not objecting

3. Stackhouse argues that even if he waived his public trial right, we should nevertheless review the closure of the courtroom for plain error. In essence, he contends that his failure to object constituted a forfeiture rather than a waiver. See infra ¶14 n.5 (discussing the difference between waiver and forfeiture as articulated in Olano, 507 U.S. at 733, 113 S.Ct. 1770). Our precedent, however, prohibits plain (or harmless) error review of alleged structural errors. See Bogdanov v. People, 941 P.2d 247, 252–53 (Colo. 1997) ("Structural errors are not amenable to either a harmless or a plain error analysis because such errors affect 'the framework within which the trial proceeds,' and are not errors in the trial process itself." (quoting Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991))), amended, 955 P.2d 997 (Colo.1997) (mem.), disapproved of on different grounds by Griego v. People, 19 P.3d 1 (Colo. 2001); Griego, 19 P.3d at 7 (quoting the Bogdanov language above as controlling precedent regarding structural error); Medina v. People, 163 P.3d 1136, 1141 (Colo.2007), as modified on denial of reh'g (Aug. 13, 2007) (noting that structural defects are not subject to harmless error analysis, but rather "require automatic reversal"). Since a violation of the public trial right is structural error, see supra ¶7, either Stackhouse affirmatively waived his public trial right by not objecting to a known closure, or the error requires automatic reversal. Under our precedent, affirmative waiver is the proper result.

to a known closure has not been abrogated by the United States Supreme Court's more recent authority in Waller and Presley. Waller adopted a four-part test that courts must satisfy before closing a courtroom over a defendant's objection, see 467 U.S. at 48, 104 S.Ct. 2210, and Presley explicitly confirmed that the public trial right extends to the jury selection process, see 558 U.S. at 213, 130 S.Ct. 721. Crucially, both cases addressed only closures that elicited contemporaneous objections, and so neither case affected Anderson's longstanding waiver principle.

¶ 12 In Waller, the Court considered "the extent to which a hearing on a motion to suppress evidence may be closed to the public over the objection of the defendant consistently with the Sixth and Fourteenth Amendment right to a public trial." 467 U.S. at 40–41, 104 S.Ct. 2210 (emphasis added). The Court held that "under the Sixth Amendment any closure of a suppression hearing over the objections of the accused must meet the tests set out" in the Court's prior decisions. Id. at 47, 104 S.Ct. 2210 (emphasis added). In reaching this conclusion, the Court specifically noted that "[o]ne of the reasons often advanced for closing a trial—avoiding tainting of the jury by pretrial publicity—is largely absent when a defendant makes an informed decision to object to the closing of the proceeding." Id. at 47 n.6, 104 S.Ct. 2210 (citation omitted). Thus, although Waller holds that a defendant's public trial right is violated if the courtroom is closed over the defendant's objection and the Waller test is not satisfied, the Court expressly and repeatedly limited its holding to closures that elicited a contemporaneous objection from the defendant.[4] As such, Waller has no bearing on our public trial waiver jurisprudence as established in Anderson.

¶ 13 Subsequently, in Presley, the Court merely confirmed that the Sixth Amendment public trial right (and therefore Waller) extends to jury selection. Presley, 558 U.S. at 213, 130 S.Ct. 721. In that case, the Court specifically noted that "Presley's counsel objected to 'the exclusion of the public from the courtroom,'" and it further declared that "the accused does have a right to insist that the voir dire of the jurors be public." Id. at 210, 213, 130 S.Ct. 721 (emphasis added). While this "insist" language may not affirmatively endorse Colorado's public trial waiver doctrine, it certainly does not forbid it. Thus, although Presley definitively confirmed that the Supreme Court's public trial jurisprudence applies to jury selection, it did not expand Waller's mandated test beyond known closures that elicit contemporaneous objections.

¶ 14 Indeed, the Supreme Court itself has recognized, albeit in dicta, that a defendant waives his right to a public trial by failing to object. See Peretz, 501 U.S. at 936, 111 S.Ct. 2661 (citing Levine v. United States, 362 U.S. 610, 619, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960), for the proposition that "failure to object to closing of [the] courtroom is waiver of [the] right to public trial" to support its conclusion that "[t]he most basic rights of criminal defendants are ... subject to waiver"). Therefore, because neither Waller nor Presley addressed waiving the public trial right by not objecting—and Peretz actually endorsed such a rule of waiver—Colorado "may determine" whether a defendant who does not object to a known closure "is procedurally barred from seeking relief as a matter of state law." See Waller, 467 U.S. at 42 n.2, 104 S.Ct. 2210. In Anderson, we determined that such non-objecting defendants have affirmatively waived their public trial rights and are thus barred from seeking appellate relief in Colorado.[5]

4. Waller's limited applicability is further evidenced by the procedural history of the case, which involved five different petitioners. As the Court noted, although four of the five petitioners' attorneys objected to the closure, the fifth "concurred in the prosecution's motion to close the suppression hearing." Waller, 467 U.S. at 42 n.2, 104 S.Ct. 2210. Based on this distinction, the Court remanded that petitioner's case so "[t]he state courts may determine on remand whether [the petitioner who did not object] is procedurally barred from seeking relief as a matter of state law." Id. Here in Colorado, a defendant who does not object to a closure is procedurally barred from seeking relief under Anderson. 490 P.2d at 48.

5. Stackhouse further asserts that his attorney's decision not to object to a known closure cannot properly be considered waiver under Olano, in which the Supreme Court stated that while "forfeiture is the failure to make the timely assertion

¶ 15 Not only does Anderson remain viable in light of the Supreme Court's more recent precedent, but the rationale buttressing its waiver policy still stands strong. First, only a select few rights are so important as to require knowing, voluntary, and intelligent waiver to be personally executed by the defendant. See, e.g., People v. Davis, 2015 CO 36, ¶ 15, 352 P.3d 950 (recognizing that only knowing, voluntary, and intelligent waiver is sufficient to waive the right to counsel). The right to a public trial is not among these; if it were, then a judge would be unable to close the courtroom over the defendant's objection despite satisfying the Waller test. See Robinson v. State, 410 Md. 91, 976 A.2d 1072, 1082 n.6 (2009) (noting that if it were true "that the right to a public trial cannot be waived by the defendant's 'inaction'" but rather required knowing, voluntary, and intelligent waiver, then a "defendant's refusal to make an 'intelligent and knowing' waiver of the right would preclude a trial judge from ever closing a courtroom, no matter the circumstances warranting closure"). Rather, the right to a public trial "falls into the class of rights that defense counsel can waive through strategic decisions." Cf. Hinojos-Mendoza v. People, 169 P.3d 662, 669 (Colo.2007) (holding the same regarding the right to confrontation). This is so because there are sound strategic reasons to waive the right to a public trial, as is particularly apparent in the context of Stackhouse's jury selection for his trial on charges of sexual assault on a minor. For example, defense counsel may prefer closure to avoid "tainting of the jury by pretrial publicity," Waller, 467 U.S. at 47 n.6, 104 S.Ct. 2210, or may believe that potentially biased jurors will be more frank and forthcoming regarding their biases if jury selection is closed to the public, see Commonwealth v. Alebord, 4 N.E.3d 248, 255, 467 Mass. 106 (2014) (noting that the defense attorney "acknowledged that he subscribed to the 'theory' that the privacy or secrecy of an individual voir dire is more conducive to obtaining candid answers from potential jurors, particularly in cases with racial or sexual undertones"), cert. denied sub nom. Alebord v. Massachusetts, — U.S. ——, 134 S.Ct. 2830, 189 L.Ed.2d 793 (2014). Moreover, the trial court's stated reason for closing a portion of Stackhouse's jury selection—to prevent family members and those connected with the trial from intermingling with a large jury pool in a small courtroom—could have inspired defense counsel here to consent to the closure out of concern that the victim's family might communicate with the venire and potentially bias jurors against the defendant. See Anderson, 490 P.2d at 48 (closing the courtroom during voir dire to prevent family members from attempting to influence the jury); cf. Robinson, 976 A.2d at 1075 (same to prevent attempted influence of a witness). Therefore, because there are sound strategic reasons for a lawyer to waive a client's right to a public trial, the right is among those where "[d]efense counsel stands as captain of the ship." See Hinojos-Mendoza, 169 P.3d at 669 (alteration in original) (quoting People v. Curtis, 681 P.2d 504, 511 (Colo.1984)).

¶ 16 Second, "we presume that attorneys know the applicable rules of procedure," and we thus "can infer from the failure to comply with the procedural requirements that the attorney made a decision not to exercise the right at issue." Id. at 670. By the same token, it has long been the rule in Colorado that defense counsel must object to a known closure to preserve appellate review on public trial grounds. Anderson, 490 P.2d at 48. Allowing a defense attorney who stands silent during a known closure to then seek invalidation of an adverse verdict on that basis would encourage gamesman-

of a right, waiver is the intentional relinquishment or abandonment of a known right." See 507 U.S. at 733, 113 S.Ct. 1770 (internal quotation marks omitted). But as the *Olano* Court recognized, "[w]hether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." Id. For the right to public trial, several policy considerations militate toward treating defense counsel's decision not to object to a known closure as an affirmative waiver of the defendant's public trial right. See infra ¶¶15–16. Therefore, Olano does not alter Colorado's longstanding rule that not objecting to a known closure constitutes "intentional relinquishment or abandonment of a known right."

ship, and any "new trial would be a 'windfall' for the defendant, a result that the Waller Court explicitly tried to prevent." See State v. Pinno, 2014 WI 74, ¶ 61, 356 Wis.2d 106, 850 N.W.2d 207, 225; cf. Robinson, 976 A.2d at 1084 (treating the public trial claim as waived "given the possibility that Appellant's lack of objection may have been the product of design, and the fact that the very analysis Appellant complains was not done by the trial court likely would have been done had he brought the matter to the court's attention"). This concern—that attorneys could intentionally not object to a closure as a strategic parachute to preserve an avenue of attack on appeal—specifically motivated our decision in Anderson and remains relevant today. See Anderson, 490 P.2d at 48 ("It is apparent in this case that the defendant's motion arose as the result of a guilty verdict and not because of the denial of a constitutional right. Only after the defendant was found guilty did hindsight cause defense counsel to decide that the defendant was denied a public trial."). Therefore, because legitimate strategic considerations might motivate counsel to not object to a closure, and because such strategic decisions should not be permitted to provide an appellate parachute to non-objecting defense counsel if the defendant is convicted, Colorado has long treated defense counsel not objecting to a known closure as an affirmative waiver of the public trial right. We see no reason to deviate from Anderson now.[6]

## IV. Conclusion

¶ 17 For the foregoing reasons, we conclude that our longstanding precedent in Anderson remains good law: Defendants in Colorado affirmatively waive their right to public trial by not objecting to known closures. Thus, the court of appeals correctly held that Stackhouse waived his public trial right by not objecting to the court's known closure during jury selection, and we therefore affirm its judgment.

JUSTICE MÁRQUEZ dissents.

JUSTICE MÁRQUEZ, dissenting.

¶ 18 Today, the majority concludes that a defendant "affirmatively waives" his Sixth Amendment right to a public trial, not by intentionally relinquishing the right or knowingly abandoning it, but merely through his counsel's failure to raise a contemporaneous objection to a courtroom closure. Maj. op. ¶¶ 1, 9, 17. Because I cannot agree that a defendant's silence necessarily strips him of the fundamental constitutional right to a public trial, I write separately and explain why, under United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), and this court's own precedent, a defendant's failure to object to a courtroom closure is, at most, a forfeiture—not a waiver—of that right, reviewable on appeal for plain error. In my view, the trial court's intentional exclusion of the public during voir dire in this case amounted to plain error warranting re-

6. We note that Colorado is not alone in deeming the public trial right to be waived when defense counsel does not object to a known closure. See Robinson, 976 A.2d at 108–10 (collecting an array of state and federal cases holding that defense counsel not objecting to a known closure constitutes waiver of the defendant's public trial right, and holding that, "[c]onsistent with the vast majority of the courts that have spoken on the subject ... a claimed violation of the right to a public trial must be preserved for appellate review by a timely objection at trial, notwithstanding that the allegation implicates structural error"). Moreover, several cases supporting Anderson's waiver principle were decided after Waller, at least one was decided after Presley, and two were denied certiorari by the Supreme Court. See, e.g., United States v. Hitt, 473 F.3d 146, 155 (5th Cir.2006) ("Where a defendant, with knowledge of the closure of the courtroom, fails to object, that defendant waives his right to a public trial."), cert. denied, 549 U.S. 1360, 127 S.Ct. 2083, 167 L.Ed.2d 802 (2007); Alvarez v. State, 827 So.2d 269, 274, 276 (Fla.Dist.Ct.App. 2002) (stating that "[t]he majority view across the country is that a failure to object to a closure of the trial waives the right to a public trial," and holding the same); Alebord, (decided after Robinson and Presley, and similarly holding that "the right to a public trial may be procedurally waived by a failure to lodge a timely objection to the offending error" and that "trial counsel may waive the right on his own as a tactical decision without informing his client"), cert. denied sub nom. Alebord v. Massachusetts, — U.S. —, 134 S.Ct. 2830, 189 L.Ed.2d 793. Thus, Colorado remains in good company through our holding that Anderson's waiver principle is still controlling precedent.

versal of Stackhouse's conviction. Therefore, I respectfully dissent.

### I. The Right to a Public Trial

¶ 19 The Sixth Amendment to the United States Constitution guarantees an accused the right to a public trial. This right serves four primary interests in our justice system: It allows the public to see that an accused is "fairly dealt with" and not unjustly condemned; it ensures that judges and prosecutors discharge their duties responsibly; it encourages witnesses to come forward; and it discourages perjury. Waller v. Georgia, 467 U.S. 39, 46, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). Although the Sixth Amendment right belongs to the criminal defendant, the United States Supreme Court has held that the right to a public trial "extends beyond the accused and can be invoked under the First Amendment," giving the press and the public, too, a First Amendment right to attend criminal trials. See Presley v. Georgia, 558 U.S. 209, 212, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010); Waller, 467 U.S. at 44–45, 104 S.Ct. 2210. The First Amendment right to a public trial likewise promotes the fairness of the tribunal and "the appearance of fairness so essential to public confidence in the system." Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 508, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). The Supreme Court has made clear that the right to a public trial encompasses not only the trial itself but also other critical proceedings, including jury voir dire. Waller, 467 U.S. at 45, 104 S.Ct. 2210 (citing Press-Enterprise, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629).

¶ 20 The right to a public trial is not absolute; it must in some situations yield to other rights or interests, including a defendant's right to a fair trial or the state's interest in protecting sensitive information. Id. As the Supreme Court has observed, however, such circumstances "will be rare." Id.

¶ 21 The United States Supreme Court addressed the right of the public and the press to attend jury selection in Press-Enterprise. There, the trial court closed the proceeding and, with the consent of both the prosecution and defense, refused to release a transcript of voir dire. Press-Enterprise, 464 U.S. at 504, 104 S.Ct. 819. The Court observed that "[n]o right ranks higher than the right of the accused to a fair trial. But the primacy of the accused's right is difficult to separate from the right of everyone in the community to attend the voir dire which promotes fairness." Id. at 508, 104 S.Ct. 819. The Court held that "[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." Id. at 510, 104 S.Ct. 819.

¶ 22 In Waller, the Supreme Court relied on Press-Enterprise and directly incorporated these factors into its Sixth Amendment analysis of the right, explaining that "there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public. The central aim of a criminal proceeding must be to try the accused fairly...." 467 U.S. at 46, 48, 104 S.Ct. 2210 (emphasis added). Thus, to justify closure of the courtroom:

- The party seeking closure must advance an overriding interest that is likely to be prejudiced.
- The closure must be no broader than required to protect this interest.
- The court must consider reasonable alternatives to closure.
- The court must make findings adequate to support closure.

Id. at 48, 104 S.Ct. 2210. Under Waller, a defendant's right to a public trial is violated where these factors are not met. See id. Importantly, the erroneous deprivation of the right to a public trial is structural error. Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); People v. Hassen, 2015 CO 49, ¶ 7, 351 P.3d 418; Hagos v. People, 2012 CO 63, ¶ 10, 288 P.3d 116, 119; accord maj. op. ¶ 7.

¶ 23 Despite the importance of the fundamental constitutional right to a public trial

and its role in preserving the fairness of the proceeding, and despite the majority's recognition that the erroneous deprivation of this right is structural error, maj. op. ¶ 7, the majority holds that a defendant's failure to object to a courtroom closure "affirmatively waives" his right to a public trial—even where a trial court wholly fails to consider the Waller factors in deciding to close the courtroom. Maj. op. ¶ 1 (relying on Anderson v. People, 176 Colo. 224, 490 P.2d 47, 48–49 (1971) (holding that a defendant waives his public trial right by failing to object to closure)).

¶ 24 Although the majority observes that "the United States Supreme Court's precedent on the right to an open trial has evolved" in the decades since this court decided Anderson, the majority concludes that our decision in Anderson remains good law because it was not abrogated by the Supreme Court's more recent decisions in Waller and Presley, which held that closure of the courtroom over a defendant's objection without satisfying the Waller factors requires automatic reversal. Maj. op. ¶¶ 5, 11. But our holding in Anderson has been called into question, not by Waller and Presley, but by the Supreme Court's decision in United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In my view, the majority fails to properly consider the impact of Olano on our holding in *Anderson* and wrongly concludes that Stackhouse waived his right to a public trial by failing to object to the court's closure.

## II. Waiver Versus Forfeiture of Constitutional Rights

¶ 25 Many courts have used the terms "waiver" and "forfeiture" interchangeably or have confused the two concepts. See, e.g., 3 Wayne R. LaFave et al., Criminal Procedure § 10.2(a) (3d ed. 2014) ("[Failure to make a timely objection] is commonly characterized as a 'waiver' of the constitutional objection, but because such a failure does not ordinarily involve an intentional relinquishment of a constitutional right it is better to view it as a 'forfeiture.' ").

¶ 26 In United States v. Olano, the Supreme Court clarified the difference between waiver and forfeiture. 507 U.S. 725, 733–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Waiver, the Court explained, is the "intentional relinquishment or abandonment of a known right." Id. at 733, 113 S.Ct. 1770 (internal quotation marks omitted). When a defendant waives a right, constitutional or otherwise, there is no error. Id. at 733–34, 113 S.Ct. 1770.

¶ 27 Mere forfeiture, in contrast, does not extinguish a legal error. Id. at 733, 113 S.Ct. 1770. The Court explained that "[n]o procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right. . . ." Id. at 731, 113 S.Ct. 1770 (internal quotation marks omitted). Yet, if a legal rule is violated during trial, "and if the defendant did not waive the rule, then there has been an 'error' . . . despite the absence of a timely objection." Id. at 733–34, 113 S.Ct. 1770. Under plain error review, appellate courts have "limited power" to correct an error when a defendant has forfeited a right, but courts must consider the error, "putative or real, in deciding whether the judgment below should be overturned." Id. at 731–32, 113 S.Ct. 1770.

¶ 28 The majority holds that "Olano does not alter Colorado's longstanding rule that not objecting to a known closure constitutes 'intentional relinquishment or abandonment of a known right.' " Maj. op. ¶ 14 n.5. But that is precisely what Olano does. Olano plainly distinguishes between a forfeiture, which occurs when a defendant fails to object, and a waiver, which requires more: specifically, the "intentional relinquishment" of a "known right." 507 U.S. at 733, 113 S.Ct. 1770. This distinction cannot lightly be cast aside.

¶ 29 This court has embraced Olano's principle that "unobjected-to constitutional errors" are reviewed for plain error. People v. Miller, 113 P.3d 743, 748, 749–50 (Colo.2005) (discussing Olano, 507 U.S. at 731–33, 113 S.Ct. 1770, in the context of the trial court's failure to instruct the jury properly on an essential element of the charged crime). Specifically, this court has observed that a

defendant "may forfeit his right to fix a constitutional error by failing to make an adequate objection" and has held that if a party raises an unpreserved argument on appeal, "the reviewing court will apply the plain error standard." Martinez v. People, 2015 CO 16, ¶¶ 13, 14, 344 P.3d 862, 867, 868 (citing Olano, 507 U.S. at 731, 113 S.Ct. 1770, in the context of the trial court's use of a constitutionally deficient jury instruction). We have also acknowledged Olano's definition of waiver as the " 'intentional relinquishment or abandonment of a known right.' " Hinojos-Mendoza v. People, 169 P.3d 662, 668 (Colo.2007) (quoting Olano, 507 U.S. at 733, 113 S.Ct. 1770, in the context of the Sixth Amendment right to confrontation); see also People v. Montour, 157 P.3d 489, 498 (Colo. 2007) (holding that "an intentional relinquishment of a known right or privilege" is required for a defendant to waive his Sixth Amendment right to sentencing by jury).

¶ 30 The majority correctly points out that not all constitutional rights require a knowing, intelligent, and voluntary waiver "personally executed by the defendant." Maj. op. ¶ 15. To be sure, some rights, like the right to confrontation, may be waived on behalf of a defendant by his counsel. E.g., Hinojos-Mendoza, 169 P.3d at 668. However, in my view, the majority is wrong to conclude, especially after Olano, that "a defendant affirmatively waives his public trial right when he does not object to a known closure," maj. op. ¶ 9. The Sixth Amendment right to a public trial implicates a criminal defendant's right to a fair trial and therefore requires more than the defendant's mere silence before it can be said that the defendant intentionally relinquished that right.

### III. Plain Error Review

¶ 31 The majority acknowledges that "[u]nder Waller, the public trial right is violated when a defendant objects to a closure and the court does not satisfy the four factors of the Waller test." Maj. op. ¶ 7. The majority also acknowledges that the erroneous deprivation of the right to a public trial is structural error. See id.; People v. Hassen, 2015 CO 49, ¶ 7, 351 P.3d 418; Hagos v. People, 2012 CO 63, ¶ 10, 288 P.3d 116, 119; see also Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 513, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). It recognizes that structural errors require automatic reversal because they are not amenable to the prejudice analysis inherent in harmless error or plain error review. Maj. op. ¶ 10 n.3. Yet it concludes that, because the violation of the right to a public trial is structural error, either a defendant affirmatively waives this right by not objecting to a known closure, or the error requires automatic reversal. Id. In other words, to avoid automatic reversal associated with structural error, the majority chooses to ignore the potential structural error by automatically treating a defendant's silence as an "intentional" relinquishment of his right.

¶ 32 In my view, a defendant's silence should not automatically strip him of relief if in fact his constitutional right to a public trial has been violated. Given that we routinely review unpreserved alleged constitutional errors for plain error, I see no principled justification not to review an unpreserved alleged error of this nature for plain error. See Hagos, ¶ 14, 288 P.3d at 120 ("[W]e review all other errors, constitutional and nonconstitutional, that were not preserved by objection for plain error."); see also United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); Martinez v. People, 2015 CO 16, ¶ 14, 344 P.3d 862, 868; People v. Miller, 113 P.3d 743, 748–49 (2005).[1]

1. The majority cites cases from other jurisdictions to support its assertion that "Colorado remains in good company through our holding that Anderson's waiver principle is still controlling precedent." Maj. op. ¶ 16 n.6. Yet several courts have come to the contrary conclusion, holding that a defendant's right to a public trial is not waived by his silence. See, e.g., United States v. Rivera, 682 F.3d 1223, 1232 (9th Cir.2012) ("[A] defendant may ... forfeit the right [to a public trial], either by affirmatively waiving it or by failing to assert it in a timely fashion." (cited in United States v. Santos, 501 Fed.Appx. 630, 632 (9th Cir.2012) (holding that the defendant forfeited his right to a public trial by failing to object and reviewing for plain error under Olano, 507 U.S. at 731, 733, 113 S.Ct. 1770))); Walton v. Briley, 361 F.3d 431, 433–34 (7th Cir.2004) (applying a heightened standard of waiver to the public trial right and concluding that a defendant must knowingly and voluntarily waive the right); People v. Vaughn, 491 Mich. 642, 821 N.W.2d 288, 296–303 (2012) (applying Olano, 507 U.S. at

¶ 33 Plain error review is an exacting standard, and for good reason. To ensure an efficient, orderly trial, it is incumbent on defendants to timely object to constitutional violations. See People v. Rollins, 892 P.2d 866, 874 n.13 (Colo.1995) ("An accused may not withhold his objections until completion of his trial and after conviction, and later complain of matters which, if he had made a timely objection, would have allowed the trial court to take corrective action."). Thus, where no contemporaneous objection to the asserted error is made at trial, appellate review is limited to determining whether the error or defect constitutes plain error. Id.

¶ 34 Plain error review allows appellate courts to correct "particularly egregious errors." Hagos, ¶ 14, 288 P.3d at 120 (internal quotation marks omitted). To be "plain," the error must be "obvious and substantial," and it leads to reversal if it "so undermined the *fundamental fairness* of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." Id. (emphasis added) (internal quotation marks omitted); see also Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) (holding that plain error requires reversal if it "seriously affects the fairness, integrity or public reputation of judicial proceedings" (emphasis added) (internal quotation marks omitted)).

¶ 35 In his special concurrence suggesting that plain error review may be warranted under the circumstances of this case, Judge Gabriel correctly observes that the United States Supreme Court has left open the question whether structural errors automatically satisfy the prejudice prong of the plain error test. People v. Stackhouse, 2012 COA 202, ¶ 42, — P.3d — (Gabriel, J., specially concurring). In my view, reversal is warranted in this case under a plain error standard.

¶ 36 First, the trial court committed an "obvious and substantial" error when it sua sponte closed voir dire to family members and the public because it did not have enough space to seat fifty jurors. See Presley v. Georgia, 558 U.S. 209, 213–16, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010) (reversing the defendant's conviction where the trial court closed the courtroom during voir dire because it was "well settled" under Press-Enterprise, 464 U.S. 501, 104 S.Ct. 819, that, absent consideration of alternatives, the trial court could not constitutionally close voir dire); Anderson, 490 P.2d at 48 ("It is ... undisputed that the right to a public trial includes that stage of the proceedings which is devoted to the selection of a jury.").

¶ 37 Second, this closure was reversible plain error because, had the trial court applied the Waller factors, it is clear on this record that excluding the public during voir dire would not pass constitutional muster. See Waller, 476 U.S. at 48, 106 S.Ct. 1683 (holding that the party seeking closure must advance an overriding interest likely to be prejudiced; closure must be no broader than necessary; the court must consider reasonable alternatives; and the court must make adequate findings to support the closure). The trial court made no findings regarding the necessity of closing the courtroom. Indeed, the record indicates only that the court believed that there was not enough space to seat both the public and the fifty potential jurors and that it was concerned that family members would commingle with the venire. Insufficient courtroom capacity does not necessarily rise to the level of an overriding interest, and even "threats of improper communications with jurors or safety concerns" cannot justify a courtroom closure unless the court articulates specific findings. Presley, 558 U.S. at 215, 130 S.Ct. 721. To the extent that the trial court was concerned with the public comingling with the jury, the court should have considered reasonable alternatives such as "reserving one or more rows for the public; dividing the jury venire panel to reduce courtroom congestion; or instructing prospective jurors not to engage or interact with audience members." Id.

731, 733, 113 S.Ct. 1770, and concluding that an unpreserved objection to closure is subject to plain error review); State v. Haskins, 38 N.J.Super. 250, 118 A.2d 707, 710–11 (1955) (holding that the right to a public trial cannot be waived by a defendant's silence); State v. Bethel, 110 Ohio St.3d 416, 854 N.E.2d 150, 170 (2006) (same); State v. Wise, 176 Wash.2d 1, 288 P.3d 1113, 1120 (2012) (same).

¶ 38 Thus, the error here was obvious and affected Stackhouse's substantial right to a public trial. Under Supreme Court case law, an improper closure impairs the fairness, integrity, and public appearance of the proceeding. Therefore, I would hold that the Waller factors were not satisfied in this case and that the trial court committed reversible plain error by excluding members of the public from voir dire.

¶ 39 The majority expresses concern that allowing a defendant to raise an unpreserved public trial right objection on appeal would encourage "gamesmanship" on the part of defense counsel—i.e., attorneys might deliberately not object to a courtroom closure, then claim reversible error on appeal. Maj. op. ¶ 16. However, the majority fails to credit the exacting standards of our circumscribed plain error review. A defendant may prevail on an unpreserved public trial violation only if the error is so "particularly egregious," Hagos, ¶ 14, 288 P.3d at 120, that it is abundantly apparent to a reviewing court that closure of the courtroom did not satisfy the Waller factors.

¶ 40 Importantly, reversal is warranted, in my view, not because the court "erred" by failing to expressly consider the Waller factors, but because the closure was not in fact justified under those factors. Where, by contrast, a record on appeal demonstrates that closure of the courtroom would have been appropriate under the Waller factors, then such closure is not reversible plain error. And where a record is insufficient for a reviewing court to discern whether the Waller factors would have been satisfied, a remand to the trial court for a Waller hearing is the appropriate remedy. In short, to review such unpreserved alleged errors is hardly an "appellate parachute" providing a convicted defendant with the windfall of a new trial. See maj. op. ¶ 16.

¶ 41 Even if I agreed with the majority that Stackhouse's failure to object was the functional equivalent of an intentional relinquishment of his public trial right, I would still find the trial court's closing the courtroom during voir dire deeply problematic. As discussed above, the right to a public trial does not belong to the defendant alone. The public and the press have a qualified First Amendment right to attend criminal trials, see Waller, 467 U.S. at 44–45, 104 S.Ct. 2210, and, in Colorado, our constitution guarantees crime victims the right to be "present at all critical stages of the criminal justice process," see Colo. Const. art. II, § 16a. Just as more is required from a defendant than silence before he waives his right to a public trial, more must be required of a trial court before it can override the interests of the public (including the interests of victims and family members) in being present. Certainly, the qualified right of the public to attend criminal trials must sometimes yield to other interests, such as the defendant's right to a fair trial or a juror's right to privacy. See Press-Enterprise, 464 U.S. at 510, 104 S.Ct. 819. But the Waller factors evolved to protect the rights of all stakeholders to a public trial, and a trial court's careful consideration of these factors will satisfy both the Sixth and the First Amendments. Without satisfying these factors, a trial court cannot constitutionally close a courtroom. See id. at 511, 104 S.Ct. 819 ("Absent consideration of alternatives to closure, the trial court could not constitutionally close the voir dire [to the public].").

## IV. Conclusion

¶ 42 In my view, the right to a public trial, like other constitutional rights that exist to preserve a fair trial, cannot be affirmatively waived by a defendant's silence. I would hold that Stackhouse's failure to object to the courtroom closure constituted a forfeiture subject to plain error review. Under plain error review, the trial court reversibly erred by excluding the public from voir dire without adequate justification. For these reasons, I respectfully dissent.