2015 CO 49

### The PEOPLE of the State of Colorado, Petitioner,

v.

### Omer Kelil HASSEN, Respondent.

### Supreme Court Case No. 13SC356

Supreme Court of Colorado.

June 29, 2015

---

Attorneys for Petitioner: Cynthia H. Coffman, Attorney General, Erin K. Grundy, Assistant Attorney General, Denver, Colorado.

Attorneys for Respondent: Douglas K. Wilson, Public Defender, Michael C. Mattis, Deputy Public Defender, Denver, Colorado.

CHIEF JUSTICE RICE delivered the Opinion of the Court.

¶1 At the trial of Respondent Omer Kelil Hassen, the trial court completely closed the courtroom during the testimony of two undercover officers. We granted certiorari to consider whether this closure constituted structural error.[1] We hold that the closure violated Hassen's Sixth Amendment right to a public trial. In so doing, we reject the People's argument that the closure was so trivial that it did not implicate Hassen's Sixth Amendment right. Accordingly, we affirm the judgment of the court of appeals.

---

1. Specifically, we granted certiorari to consider: "Whether the court of appeals erred in concluding that exclusion of the public from a small portion of a criminal trial constituted structural error."

## I. Facts and Procedural History

¶ 2 The People charged Hassen with possession of a schedule II controlled substance—second offense; possession with intent to distribute a schedule II controlled substance—second offense; and three habitual counts. On the second day of trial, the People intended to call Officer S.P. Before doing so, the prosecutor requested that the trial court close the courtroom because spectators might recognize Officer S.P., who was working undercover at the time. The trial court granted the request over Hassen's objection, and it evicted the entire public from the courtroom, including members of Hassen's family. Hassen then requested a limiting instruction, and the trial court informed the jury that it should not view Officer S.P. differently from any other witness.

¶ 3 Later that morning, the prosecution made the same request for a second undercover witness, Officer E.W. The trial court again closed the courtroom entirely (Hassen renewed his objection), and it issued a limiting instruction. The jury ultimately acquitted Hassen of distribution but found him guilty of possession.

¶ 4 Hassen appealed, arguing that the closure of the courtroom violated his Sixth Amendment right to a public trial. The court of appeals agreed, holding that the closure failed to comply with the U.S. Supreme Court's four-part test in *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). *People v. Hassen*, 2013 COA 16M, ¶ 12, —— P.3d ——, *as modified on denial of reh'g* (Apr. 25, 2013). Because the court of appeals also concluded that "the exclusion of the public was more than a momentary and fleeting occurrence," it remanded Hassen's case for a new trial. *Id.* at ¶ 23. We granted certiorari.

## II. Standard of Review

¶ 5 A trial court's decision to close the courtroom presents a mixed question of law and fact. *See United States v. Al–Smadi*, 15 F.3d 153, 154 (10th Cir. 1994). In reviewing such questions, "we accept the trial court's

findings of fact absent an abuse of discretion, but we review the court's legal conclusions de novo." *Pena–Rodriguez v. People*, 2015 CO 31, ¶ 8, 350 P.3d 287.

## III. Analysis

¶ 6 To resolve whether the trial court's closure violated Hassen's Sixth Amendment right to a public trial, we first examine both the right itself and the Supreme Court's analysis of the right in *Waller*. We then conclude that the trial court failed to comply with *Waller* and that this failure constituted structural error, requiring a new trial. In so doing, we reject the People's argument that the closure was so trivial that it did not implicate Hassen's Sixth Amendment right.

### A. The Sixth Amendment Right to a Public Trial

¶ 7 Both the United States and the Colorado Constitutions guarantee criminal defendants the right to a public trial. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16. When the trial court erroneously deprives the defendant of his public trial right, the error is structural in nature. *Hagos v. People*, 2012 CO 63, ¶ 10, 288 P.3d 116, 119; *accord United States v. Gonzalez–Lopez*, 548 U.S. 140, 148–49, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). Structural errors "are not amenable to either a harmless error or a plain error analysis because such errors affect the framework within which the trial proceeds, and are not errors in the trial process itself." *Griego v. People*, 19 P.3d 1, 7 (Colo. 2001) (internal quotation marks omitted); *accord Gonzalez–Lopez*, 548 U.S. at 148, 126 S.Ct. 2557. Therefore, "[t]hey require automatic reversal without individualized analysis of how the error impairs the reliability of the judgment of conviction." *People v. Flockhart*, 2013 CO 42, ¶ 17, 304 P.3d 227, 232.[2]

¶ 8 Although the public trial right is enshrined in the Constitution—and although *erroneous* deprivation of the right constitutes structural error—the right itself is not absolute. *See Waller*, 467 U.S. at 45,

---

2. This rubric assumes that the defendant objected to the closure. In cases where the defendant does not object to a known closure, he simply waives his right to a public trial. *See Stackhouse v. People*, 2015 CO 48, ¶ 17, —— P.3d ——.

104 S.Ct. 2210. It may yield to competing interests, including "the government's interest in inhibiting disclosure of sensitive information." *Id.* The Supreme Court has cautioned, however, that "[s]uch circumstances will be rare" and that "the balance of interests must be struck with special care." *Id.*

▮ ¶ 9 In *Waller*, the Court articulated four requirements that a trial court must meet in order to validly close the courtroom. First, "the party seeking to close the [proceeding] must advance an overriding interest that is likely to be prejudiced." *Id.* at 48, 104 S.Ct. 2210. Second, "the closure must be no broader than necessary to protect that interest." *Id.* Third, "the trial court must consider reasonable alternatives to closing the proceeding." *Id.* Finally, the trial court "must make findings adequate to support the closure." *Id.* Regarding the third element, the Court has since reiterated that "[t]rial courts are obligated to take *every reasonable measure* to accommodate public attendance at criminal trials." *Presley v. Georgia,* 558 U.S. 209, 215, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010) (per curiam) (emphasis added).

¶ 10 With this framework in mind, we now consider whether the trial court's total closure of the courtroom violated Hassen's Sixth Amendment right to a public trial.

### B. The Closure Violated Hassen's Sixth Amendment Right to a Public Trial

▮ ¶ 11 It is undisputed that the trial court did not formally apply *Waller*. The People argue, however, that this was a mere oversight; they suggest that even though the trial court did not mechanically apply *Waller* pro forma, the closure itself substantively satisfied the *Waller* requirements. We disagree. The record clearly establishes that the closure here failed to comply not only with the letter of *Waller*, but also with its spirit.

¶ 12 The People contend that protecting the identities of the undercover officers constituted "an overriding interest" in accordance with *Waller's* first element. That is a matter of debate. *See People v. Echevarria,* 21 N.Y.3d 1, 966 N.Y.S.2d 747, 989 N.E.2d 9, 15–16 (2013) (recognizing that "[t]he safety of law enforcement officers unquestionably *may* constitute an overriding interest" but that "the proponent of closure must demonstrate a *substantial probability* that the identified interest will be prejudiced by an open courtroom" (emphasis added) (internal quotation marks omitted) (citing *Press–Enter. Co. v. Superior Court of Cal.,* 478 U.S. 1, 14, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986))). But we need not resolve this debate here. Even assuming, arguendo, that concern for the officers' safety satisfied the first *Waller* prong, the closure met none of the remaining requirements. Although a "closure must be no broader than necessary," *Waller,* 467 U.S. at 48, 104 S.Ct. 2210, here the trial court excluded the entire public, including Hassen's family. Moreover, the trial court failed to consider any potential alternatives to closing the courtroom. Finally, it made no specific findings in support of the closure, instead simply stating, "I'll close the courtroom for this witness over [Hassen's] objection." Therefore, because the closure failed to comply with at least three of the four *Waller* prerequisites, the People's asserted interest in securing the officers' safety cannot render the closure permissible. *Cf. Presley,* 558 U.S. at 216, 130 S.Ct. 721 ("[E]ven assuming, *arguendo*, that the trial court had an overriding interest in closing [the courtroom], it was still incumbent upon it to consider all reasonable alternatives to closure. It did not, and that is all this Court needs to decide.").

¶ 13 The People nevertheless insist that even if the closure failed to comply with *Waller*, it was so trivial that it did not implicate Hassen's Sixth Amendment right to a public trial. In so doing, the People encourage us to import the "triviality" analysis from the Second Circuit's decision in *Peterson v. Williams,* 85 F.3d 39 (2d Cir. 1996). In that case, the district court closed the courtroom during the testimony of an undercover witness. *Id.* at 41. Following that witness's testimony, the defendant briefly took the stand, but the district court neglected to reopen the courtroom due to "an administerial mistake." *Id.* Shortly thereafter, defense counsel alerted the court that the courtroom had remained closed during the defendant's testimony, and she moved for a mistrial. *Id.*

The district court denied the motion, finding "that no prejudice can be shown against the defendant in terms of this administerial mistake." *Id.* at 42.

¶ 14 The Second Circuit affirmed, holding that "even an unjustified closure may, on its facts, be so trivial as not to violate" a defendant's right to a public trial. *Id.* at 40. The court was careful to distinguish between triviality analysis and harmless error review:

> A triviality standard, properly understood, does not dismiss a defendant's claim on the grounds that the defendant was guilty anyway or that he did not suffer "prejudice" or "specific injury." It is, in other words, very different from a harmless error inquiry. It looks, rather, to whether the actions of the court and the effect that they had on the conduct of the trial deprived the defendant—whether otherwise innocent or guilty–of the protections conferred by the Sixth Amendment.

*Id.* at 42. Thus, in advocating for a triviality standard, the People do not argue that the trial court made a *minor* error; such an argument would irreconcilably clash with our clear jurisprudence that invalid court closures over a defendant's objection are structural errors requiring automatic reversal. *See supra* ¶ 7. Rather, the People suggest that the closure was so trivial that, in fact, *no* error occurred.

¶ 15 We have never considered whether to adopt the Second Circuit's triviality framework, but we need not rule on its propriety today. Even if *Peterson's* triviality analysis applied, the closure here was plainly not trivial. In *Peterson,* the court recognized

that the public trial right promotes four specific goals: (1) "to ensure a fair trial"; (2) "to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions"; (3) "to encourage witnesses to come forward"; and (4) "to discourage perjury." 85 F.3d at 43 (citing *Waller,* 467 U.S. at 46–47, 104 S.Ct. 2210). The court then held that, because the closure was "extremely short" and "entirely inadvertent," it did not compromise any of these goals and was therefore trivial. *See id.* at 44.

¶ 16 The facts here are markedly different. Given that the testimony of the two undercover officers totaled roughly twenty-seven pages in the trial transcript, we cannot conclude that the multiple closures were "extremely short." Moreover, the closure prevented potential witnesses from coming forward to contradict (or corroborate) the officers' testimony.[3] Finally, because the closure here was intentional rather than inadvertent, it failed to discourage perjury, as the witnesses were fully aware that the courtroom was closed. *Contra id.* at 43 ("[S]ince the defendant did not know of the closure and he was the only one to have testified during it, the closure was most unlikely to have encouraged perjury.").

¶ 17 Therefore, we need not decide today whether *Peterson's* triviality framework is generally appropriate. Instead, we simply conclude that the closure here was not trivial. Accordingly, we hold that the closure violated Hassen's Sixth Amendment right to a public trial. Because such an error is structural, Hassen is entitled to a new trial.[4]

---

3. The People argue that the officers' testimony was cumulative, meaning that even though spectators could not observe their particular testimony, they could either contradict or corroborate similar testimony of other witnesses. *Cf. Peterson,* 85 F.3d at 43 ("[J]ust about all of the defendant's testimony that was relevant was repeated, soon after he testified, as part of the defense counsel's summation."). But the record does not bear this out conclusively. Furthermore, accepting the People's argument that "the substantive testimony of the [undercover] officers was repeated by other witnesses" would call into question exactly why the People called the officers in the first place.

4. The People contend that the remedy of a new trial is too drastic, pointing to *Waller's* state-

ments that "the remedy should be appropriate to the violation" and that a new trial could result in "a windfall for the defendant." 467 U.S. at 50, 104 S.Ct. 2210. But *Waller* involved a closed pretrial suppression hearing, not trial testimony before a jury. *See id.* at 42–43, 104 S.Ct. 2210. The Court thus remanded for a new and public suppression hearing, noting that a new trial need be held only if that hearing resulted "in the suppression of material evidence not suppressed at the first trial, or in some other material change in the positions of the parties." *Id.* at 50, 104 S.Ct. 2210. Therefore, the offensive closure in *Waller* involved a proceeding entirely outside the confines of the jury trial. Here, in contrast, the improper closure occurred *during* the trial. It is thus impossible for the trial court to simply "redo" the questioning of the two undercover

## IV. Conclusion

¶ 18 When the trial court closes the courtroom over a defendant's objection, it must satisfy the four *Waller* factors. Here, the closure failed to comply with *Waller*, and it was not trivial, meaning it violated Hassen's Sixth Amendment right to a public trial. Accordingly, we affirm the judgment of the court of appeals, and we remand the case to that court with instructions to return the case to the trial court for a new trial.

officers; unlike the suppression hearing in *Waller*, the officers' testimony cannot be isolated from the remainder of the previously held trial. *Cf. Presley v. State*, 307 Ga.App. 706, 706 S.E.2d 103, 104 (2011) (remanding for a new trial following the Supreme Court's opinion in *Presley*, 558 U.S. at 216, 130 S.Ct. 721, that the trial court improperly closed voir dire without considering reasonable alternatives).