BEAM, Circuit Judge.
Armón Thompson appeals from the district court’s[1] sentence imposed following Thompson’s guilty plea to one count of being a felon in possession of a firearm. On appeal, Thompson claims the district court violated his Sixth Amendment right to a public trial at the sentencing hearing when the court closed the courtroom during the testimony of one witness. Because we find no constitutional infirmity, we affirm.
I. BACKGROUND
Thompson pled guilty to one count of being a felon in possession of a firearm following his arrest on December 2, 2010. On that date, officers were conducting a homicide investigation in St. Joseph, Missouri, and were attempting to locate a key suspect. Thompson accompanied the suspect on that date and officers discovered both men in the basement of a residence, along with several firearms, some of which, following ballistic and DNA testing, were suspected to have been used in the homicide under investigation. Officers arrested both men on outstanding felony warrants and took them in for questioning in relation to the homicide.
Pending sentencing, Thompson was held at the St. Claire County Jail in Osceola, Missouri. At least for part of Thompson’s time in jail, he was housed with Justin Campbell. At Thompson’s sentencing hearing, Detective Scott Coates testified that he interviewed Campbell after learning that Campbell might have information *391 regarding the homicide. Detective Coates testified that during the interview, Campbell told Detective Coates that while Campbell was housed with Thompson, Thompson told him that he, Thompson, was involved in a drive-by shooting in St. Joseph, along with another friend who had been charged with the murder. Campbell also relayed information to Detective Coates about the shooting as told to him by Thompson that corroborated existing evidence in the case. Detective Coates further testified that Campbell expressed concern for his own safety should Thompson find out that Campbell had given the information.
Following Detective Coates’ testimony, just prior to calling Campbell to the witness stand, the government requested that the courtroom be cleared given Campbell’s expressed concern for his safety. Defense counsel pointed out to the court that the people in the gallery were all family of Thompson; that no one in the courtroom was related to anyone else. The court asked whether “somebody from the press” was there, and when the court learned that there was not, it granted the request to clear the courtroom, specifically excluding a member of the court staff who remained in the gallery. At that point, the parties approached the bench and defense counsel made a record on the matter, objecting to any closure because of the public nature of the hearing, noting that everyone cleared were family members of Thompson and arguing that there was no evidence “of [the people being cleared] being in a position to threaten or harm Mr. Campbell.” The court responded, “[t]he allegations are that he was a gang member and was involved in drive-by shootings so I’m going to overrule your objection.” The courtroom was cleared and Campbell testified.
The portion of Campbell’s testimony relevant here corroborated that of Detective Coates. Campbell reiterated that Thompson told Campbell that he, Thompson, had been involved in a drive-by shooting and conveyed details to Campbell about surrounding events that were supported by evidence in the homicide case. The district court found Campbell credible and considered Campbell’s testimony in its sentencing calculation, specifically its determinations regarding suggested enhancements arising from Thompson’s use or possession of any firearm or ammunition in connection with another felony offense that resulted in death. The court sentenced Thompson to 120 months’ imprisonment. Thompson appeals, claiming that when the court cleared the courtroom prior to Campbell’s testimony, it violated Thompson’s Sixth Amendment right to a public trial, a structural error that is not amenable to harmless error review.
II. DISCUSSION
A threshold question is whether the right to a public trial in criminal cases under the Sixth Amendment extends to sentencing hearings. The Sixth Amendment provides:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.
U.S. Const, amend. VI.
The public trial right of the Sixth Amendment has long been viewed as “ ‘a safeguard against any attempt to employ our courts as instruments of persecution.’ ” *392 United States v. Thunder, 438 F.3d 866, 867 (8th Cir.2006) (quoting In re Oliver, 333 U.S. 257, 270, 68 S.Ct. 499, 92 L.Ed. 682 (1948)). “ ‘Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole.’ ” Thunder, 438 F.3d at 867 (quoting Globe Newspaper Co. v.Super. Ct. for Norfolk Cnty., 457 U.S. 596, 606, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982)).
The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.
Waller v. Georgia, 467 U.S. 39, 46, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (quotations omitted); accord Estes v. Texas, 381 U.S. 532, 588, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) (Harlan, J., concurring) (“Essentially, the public-trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings.”).
Whether the right to a public trial under the Sixth Amendment attaches at sentencing is an issue that has not been specifically addressed by this court or the Supreme Court. However, it is clearly established that the public trial right extends beyond actual proof at trial, Waller, 467 U.S. at 45, 104 S.Ct. 2210, and can be invoked by the press and the public under the First Amendment, or the accused under the Sixth Amendment, Presley v. Georgia, 558 U.S. 209, 130 S.Ct. 721, 723, 175 L.Ed.2d 675 (2010) (per curiam).
To determine whether the Sixth Amendment right to a public trial attaches at sentencing, jurisprudence discussing the First Amendment right to a public trial informs the analysis.
Of course, our First Amendment right of access cases do not directly control here, because this case concerns a criminal defendant’s Sixth Amendment right to a public trial, and “[t]he extent to which the First and Sixth Amendment public trial rights are coextensive is an open question.” Presley v. Georgia 558 U.S. 209, 130 S.Ct. 721, 724, 175 L.Ed.2d 675 (2010) (per curiam). As the Supreme Court observed in Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), however, precedents concerning the reach of the public’s First Amendment right of access may inform the scope of the defendant’s Sixth Amendment right to a public trial, because “there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public.” Id. at 46, 104 S.Ct. 2210 (emphasis added).
United States v. Rivera, 682 F.3d 1223, 1229 (9th Cir.2012) (holding that the Sixth Amendment right to a public trial attaches to sentencing proceedings, in part, because the judge and prosecutor continue to bear grave responsibilities, both to the accused and to the broader community).
The Presley Court found it unnecessary, when speaking of the coexistence of the First and Sixth Amendments’ public trial rights, “to speculate whether or in what circumstances the reach or protections of one might be greater than the other,” but intimated that doing so would require a legitimate reason to give one who asserts a First Amendment privilege greater rights to insist on public proceedings than the accused has. 130 S.Ct. at 724. Emphasizing that the accused’s Sixth Amendment public trial right is not to be taken lightly, *393 the Court reiterated that “ ‘[o]ur cases have uniformly recognized the public-trial guarantee as one created for the benefit of the defendant,’ ” and that “[t]here could be no explanation for barring the accused from raising a constitutional right that is unmistakably for his or her benefit.” Id. (quoting Gannett Co. v. DePasquale, 443 U.S. 368, 380, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979)).
Accordingly, we look to the Court’s guidance to determine whether the Sixth Amendment public trial right attaches at sentencing. To do so, as informed by the Court’s First Amendment public access jurisprudence, we must determine whether sentencing hearings are traditionally conducted in an open fashion, and whether public access operates to curb prosecutorial or judicial misconduct and furthers the public interest in understanding the criminal justice system. Press-Enter. Co. v. Super. Ct. of Cal. for the Cnty. of Riverside, 478 U.S. 1, 8, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986). Stated differently, we turn our analysis to whether public access at a sentencing hearing plays a significant positive role in its functioning such that the Sixth Amendment right attaches. Id. at 8, 106 S.Ct. 2735; see also Waller, 467 U.S. at 46-47, 104 S.Ct. 2210 (holding that the interests and aims of the Sixth Amendment were no less pressing at suppression hearings, which often are as important as the trial itself).
Persuasive to the Waller Court, for example, was the fact that suppression hearings, like sentencing hearings, often resemble bench trials, where witnesses are sworn and testify, and of course, counsel argue their positions. And, just like sentencing hearings, “[t]he outcome [of suppression hearings] frequently depends on a resolution of factual matters.” Waller, 467 U.S. at 47, 104 S.Ct. 2210. These factors weighed favorably in the Court’s determination that “[t]he need for an open proceeding may be particularly strong with respect to suppression hearings.” Id. Sentencing hearings have also historically been open to the public. United States v. Alcantara, 396 F.3d 189, 197 (2d Cir.2005) (discussing the historical openness of sentencing hearings while analyzing the First Amendment right to a public trial); In re Wash. Post Co., 807 F.2d 383, 389 (4th Cir.1986) (same). “Numerous cases from over a century ago describe sentencing proceedings held in open court.” Alcan-tara, 396 F.3d at 197. Too, sentencing hearings are “trial like” in that witnesses are sworn and testify, factual determinations are made, and counsel argue their positions. “[T]he values of encouraging witnesses to come forward and discouraging perjury remain salient at sentencing, because the parties may present witnesses at sentencing.” Rivera, 682 F.3d at 1228. These factors weigh favorably in our determination that the Sixth Amendment public trial right attaches at sentencing.
There are additional factors that inform our determination today regarding the accused’s Sixth Amendment right to public access at sentencing. First, having noted that the jurisprudence addressing the public trial right in the context of the First Amendment informs our analysis; the Second, Fourth, Fifth, Seventh, and Ninth Circuits have held that the First Amendment public trial right applies at sentencing. Alcantara, 396 F.3d at 196-99; In re Wash. Post Co., 807 F.2d at 388-89; Cardenas-Guillen v. Hearst Newspapers, L.L.C., 641 F.3d 168, 176 (5th Cir.2011); United States v. Eppinger, 49 F.3d 1244, 1252-53 (7th Cir.1995); see also CBS, Inc. v. United States Dist. Ct. for the Cent. Dist. of Cal, 765 F.2d 823, 825 (9th Cir.1985) (holding that the public and press have a right of access to various documents filed in connection with sentencing *394 proceedings). In juxtaposition with these holdings, as noted earlier, the Supreme Court has made clear that the public trial guarantee was a special-protection right created for the benefit of the defendant, see Presley, 130 S.Ct. at 724, and thus it would seem axiomatic that the accused at the very least has an equal Sixth Amendment right to public access at sentencing. As is the case in the context of juror selection proceedings, “there is no legitimate reason [in the context of sentencing hearings] to give one who asserts a First Amendment privilege greater rights to insist on public proceedings than the accused has.” Presley, 130 S.Ct. at 724.
Second, highlighting the importance of sentencing hearings generally, the Supreme Court has held that “sentencing is a critical stage of the criminal proceedings at which [a defendant] is entitled to the effective assistance of counsel.” Gardner v. Florida, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); see also Mempa v. Rhay, 389 U.S. 128, 134, 137, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) (recognizing the “critical nature” of sentencing in criminal proceedings such that the right to counsel attaches). Some courts, in the First Amendment public trial access analysis, have further held that, in fact, sentencing is so integral to the trial process that it is certainly contemplated by the constitutional language. These courts deduce that the Supreme Court’s determination that there is a First Amendment right of access at trial, logically applies to sentencing because the latter is wholly contemplated by the former.
“Sentencing may ... be viewed as within the scope of the criminal trial itself. Sentencing can occur before the termination of the trial proceeding, and, even if it occurs in a separate hearing, it clearly amounts to the culmination of the trial. Moreover, even if ... sentencing hearings are not considered a part of the trial itself, they are surely as much an integral part of a criminal prosecution as are preliminary probable-cause hearings, suppression hearings, or bail hearings, all of which have been held to be subject to the public’s First Amendment right of access.”
Alcantara, 396 F.3d at 196-97 (quoting In re Wash. Post Co., 807 F.2d at 389). While these holdings are not determinative in our instant analysis, they inform our conclusion that the Sixth Amendment public trial right attaches at sentencing.
In light of the First Amendment public trial access jurisprudence, the emphasis by the Supreme Court that the right was created specifically for the benefit of the accused, the Supreme Court’s reminder regarding the critical nature of sentencing hearings themselves, and, most importantly, our conclusion that public access at a sentencing hearing plays a significant positive role in its functioning and furthers the benefits sought to be afforded the accused under the Sixth Amendment, we hold that the Sixth Amendment right to public access attaches at sentencing. Accordingly, we move on to determine whether the district court, in this instance, violated that right.
The Sixth Amendment right to public access is, however, not absolute. And, we review the district court’s ruling to close the courtroom under an abuse of discretion. United States v. Farmer, 32 F.3d 369, 371 (8th Cir.1994). The right must “give way in certain cases to other rights or interests, such as the defendant’s right to a fair trial or the government’s interest in inhibiting disclosure of sensitive information.” Waller, 467 U.S. at 45, 104 S.Ct. 2210. In rare circumstances, when complete closure is contemplated,
[t]he presumption of openness may be overcome only by an overriding interest *395 based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.
Id. (quotation omitted).
In order to completely close a trial or similar proceeding,
the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.
Id. at 48,104 S.Ct. 2210.
However, “we have held that where the trial court orders only a partial closure, there need only be a showing of a ‘substantial reason’ for the partial closure, as opposed to Waller’s ‘overriding interest’ requirement.” United States v. Pet-ters, 663 F.3d 375, 383 (8th Cir.2011) (assuming for purposes of analysis that the district court’s prohibition of the use of a witness’s name during a pretrial proceeding was a partial closure), cert. denied, — U.S. -, 132 S.Ct. 2417, 182 L.Ed.2d 1024 (2012). Whether a closure is total or partial, according to this circuit’s precedent, depends not on how long a trial is closed, but rather who is excluded during the period of time in question. Thunder, 438 F.3d at 868 (explaining that the exclusion of the members of the public and the press during a child victim’s testimony is a total closure of the courtroom); Farmer, 32 F.3d at 370-71 (ordering all spectators other than the members of the victim’s family from the courtroom during the balance of the victim’s testimony was a partial closure); see also Woods v. Kuhlmann, 977 F.2d 74, 75-6 (2d Cir.1992) (ordering all members of the defendant’s family from the courtroom after the prosecutor informed the judge that a witness was terrified of retaliation from the family was a partial closure).
“The justification for this lower[, ‘substantial reason’] standard is that a partial closure does not implicate the same secrecy and fairness concerns that a total closure does.” Petters, 663 F.3d at 383 (internal quotations omitted). So, a partial closure does not rise to the level of a Sixth Amendment violation if: (1) there is a substantial interest likely to be prejudiced, (2) the closure is no broader than necessary to protect that interest, (3) the trial court considers reasonable alternatives to closing the proceeding, and (4) the trial court makes findings adequate to support the closure. Farmer, 32 F.3d at 371. Additionally, even though a trial court must make sufficient findings to allow the reviewing court to determine whether the partial closure was proper, in this circuit, “specific findings by the district court are not necessary if we can glean sufficient support for a partial temporary closure from the record.” Id.
In this case, the district court, noting the absence of press representation at the proceeding, reviewed its possible alternatives and cleared Thompson’s family from the courtroom during Campbell’s testimony, a partial closure. From the record, it is clear that Thompson’s family members were the only people in the gallery who were not court staff. And, even though the district court did not make a thorough record articulating the substantial reason it contemplated prior to its partial closure, the record is sufficient for this court, on appeal, to do so. Having made such a review, we find no abuse of discretion by the district court.
*396 The government’s interest in protecting its witness and the witness’s concern for his own safety justify the partial closing in this case. See Presley, 130 S.Ct. at 725 (recognizing that safety concerns and threats could certainly be concrete enough reasons to warrant closing a trial); see also United States v. Addison, 708 F.3d 1181, 1183 (10th Cir.2013) (focusing on one reason alone — witness intimidation — because that reason by itself supports affir-mance of a district court’s partial closure). Detective Coates clearly laid out Campbell’s expressed concern and nervousness about his safety and well-being should Thompson find out that Campbell had provided the information. That the district court did not hear of Campbell’s fears from Campbell’s own lips is of no concern. The court had the information. Too, the courtroom was not cleared until Campbell, the last witness, testified. Because the only people asked to leave were Thompson’s family members, and given the evidence of Campbell’s fear of testifying in their presence, the closure was no broader than necessary and we can think of no other alternatives based on this record that would lead us to conclude that the district court abused its discretion in this regard.
Considering the record before the district court, which laid out Campbell’s expressed fear of testifying against Thompson, an alleged gang member involved in a drive-by shooting, who was implicated in other gang-related, violent activities by other witnesses; we find no abuse of discretion in the court’s conclusion that Thompson’s family should be excluded from the courtroom during Campbell’s testimony. See Addison, 708 F.3d at 1183 (collecting cases that have upheld closure to protect testifying witnesses).
III. CONCLUSION
For the forgoing reasons, as noted at the outset, we find no constitutional infirmity in the district court’s sentencing of Thompson. Accordingly, we affirm.

. The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.