RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0188p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 13-6273

JASON SIMMONS,

*Defendant-Appellant.*

───────────────

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:12-cr-20081-11—S. Thomas Anderson, District Judge.

Argued: January 14, 2015

Decided and Filed: August 14, 2015

Before: COLE, Chief Judge; KETHLEDGE, Circuit Judge; OLIVER, District Judge.[*]

───────────────

## COUNSEL

───────────────

**ARGUED:** Richard A. Cline, CLINE, MANN & CO., LLC, Powell, Ohio, for Appellant.
Kevin G. Ritz, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.
**ON BRIEF:** Richard A. Cline, CLINE, MANN & CO., LLC, Powell, Ohio, for Appellant.
Kevin G. Ritz, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

COLE, Chief Judge.   During Jason Simmons's criminal trial for drug conspiracy, the government moved to exclude three of Simmons's co-defendants from the courtroom during the

───────────────

[*]The Honorable Solomon Oliver, Jr., Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

testimony of one of its witnesses. The government argued that, due to certain comments made by Simmons and other individuals outside the courtroom, the presence of the three co-defendants might make the witness feel uncomfortable and intimidated even though the government conceded that none of the statements were threatening and that it did not know whether they were made by any of the three co-defendants it sought to exclude. The district court, reasoning that it had discretion to bar any individual from the courtroom if there were any possibility that his or her presence might be intimidating, granted the motion.

At issue is whether the district court violated Simmons's Sixth Amendment right to a public trial when it excluded the three co-defendants from the courtroom without making factual findings that adequately support its decision. We hold that it did.

## I. BACKGROUND

In 2012, Simmons was indicted for conspiracy to sell cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Twenty other people were indicted as part of the conspiracy. During their investigation, federal agents conducting a wiretap heard phone conversations about drugs between Simmons and Anthony Nixon, a drug dealer who was one of those indicted. Simmons and Nixon were "pretty close" and had known each other for more than ten years. Nixon later told the government about Simmons's involvement in the conspiracy and served as one of the government's witnesses during Simmons's trial.

Before Nixon's direct examination, the prosecutor told the district court that three of Simmons's co-defendants—Markee Barbee, Keithian Helm, and Derrick Dawson—were in the back of the courtroom. The prosecutor expressed concern that Nixon "might be intimidated on that basis" and asked that they "at least" be excluded from the trial during Nixon's testimony. He noted that "disparaging things," but "not threats," had been said to Nixon, though the prosecutor conceded that he did not know if those comments were made by the three co-defendants. He further stated that "Mr. Simmons even has been to see Mr. Nixon, recently, twice in the last week, and that wasn't threatening either, it was more in the nature of, hey, man, are you going to really testify against me," which, though not "threatening," "was disquieting and uncomfortable" for Nixon. The prosecutor acknowledged that he had not spoken to, or

informed, Nixon about the three co-defendants' presence in the courtroom or about the prosecutor's intention to argue for their exclusion during Nixon's testimony.

Simmons's counsel objected, stating that "the courtrooms in the United States are open to the public" and that the prosecutor was merely assuming that the three co-defendants would be intimidating. The parties said nothing more, and neither Simmons's counsel, the prosecutor, nor the district court knew why the three co-defendants were in the courtroom.

The district court did not ask Nixon whether he felt uncomfortable or intimidated due to the presence of the three co-defendants; it also did not inquire about the bases for the prosecutor's assertions or ask why statements that might have been made by other parties were relevant to the three individuals asked to leave the courtroom. Nevertheless, the district court said that it would "ask them to step out during [Nixon's] testimony." While it observed that the three co-defendants "have a constitutional right also to appear during a trial" and that it "[did not] know their purpose for being here," the district court reasoned that it had the discretion to exclude individuals from the courtroom "if there is any possibility that it would be intimidating or possibly if it would influence a witness's testimony." It stated that it would rather be cautious by "making sure that no one feels threatened or intimidated because of the presence of other people in the courtroom," so the district court asked the courtroom security officer "to quietly go back and speak to them and ask them to step out until [Nixon] completes his testimony." The three co-defendants left without objecting, and the jury was not present when these events occurred.

Nixon testified that he and Simmons sold cocaine to one another. Audio recordings of drug-related phone conversations between Nixon and Simmons were played for the jury, and Nixon described the drug deals they were discussing on those calls.

The jury rendered a guilty verdict. The district court later sentenced Simmons to the mandatory minimum of sixty months. Simmons appeals, arguing that the exclusion of the three co-defendants during Nixon's testimony violated Simmons's right to a public trial under the Sixth Amendment. He asks that this court vacate his conviction and grant him a new trial.

## II. ANALYSIS

### A. Standard of Review

In determining whether a defendant's Sixth Amendment rights have been violated, we review questions of law de novo and questions of fact under the clearly-erroneous standard. *See United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007). We assess a district court's compliance with the Sixth Amendment's procedural requirements for abuse of discretion. *See United States v. Eisner*, 533 F.2d 987, 994 (6th Cir. 1976).

### B. Merits

#### 1. Legal Framework

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . public trial." U.S. Const. amend. VI. The Supreme Court has explained that "[t]he central aim of a criminal proceeding must be to try the accused fairly," and the right to a public trial is "one created for the benefit of the defendant." *Waller v. Georgia*, 467 U.S. 39, 46 (1984) (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979)); *see also Presley v. Georgia*, 558 U.S. 209, 212 (2010) (explaining that the right to a public trial "is the right of the accused"). Furthermore, "[i]n addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." *Waller*, 467 U.S. at 46. However, "the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Id.* at 45. Such circumstances are "rare" and "the balance of interests must be struck with special care." *Id.*

In *Waller v. Georgia*, the Supreme Court established the test for determining whether a courtroom closure violates a criminal defendant's Sixth Amendment right to a public trial:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Id.* (quoting *Press-Enter. Co. v. Super. Ct. of Cal., Riverside Cnty.*, 464 U.S. 501, 510 (1984)).

In the same opinion, the Supreme Court articulated the test as a four-factor analysis:

> [(1)] the party seeking to close a public hearing must advance an overriding interest that is likely to be prejudiced, [(2)] the closure must be no broader than necessary to protect that interest, [(3)] the trial court must consider reasonable alternatives to closing the proceeding, and [(4)] it must make findings adequate to support the closure.

*Id.* at 48; *see also Johnson v. Sherry*, 586 F.3d 439, 443 (6th Cir. 2009). Courts frequently call this the "*Waller* test." As we have explained in applying that test, "[b]ecause of the great, though intangible, societal loss that flows from closing courthouse doors, the denial of a right to a public trial is considered a structural error for which prejudice is presumed." *Johnson*, 586 F.3d at 443 (internal quotation marks omitted). "Structural errors require automatic reversal, despite the effect of the error on the trial's outcome." *United States v. Stewart*, 306 F.3d 295, 321 (6th Cir. 2002); *see also Eisner*, 533 F.2d at 993.

*Waller* did not distinguish between complete and partial closures of trials.[1] *Waller*, 467 U.S. at 47. Nearly all federal courts of appeals, however, have distinguished between the total closure of proceedings and situations in which a courtroom is only partially closed to certain spectators. *Garcia v. Bertsch*, 470 F.3d 748, 752 (8th Cir. 2006) ("Many courts . . . have distinguished the complete closure in *Waller* from partial closures."). "Whether a closure is total or partial . . . depends not on how long a trial is closed, but rather who is excluded during the period of time in question." *United States v. Thompson*, 713 F.3d 388, 395 (8th Cir. 2013). In other words, a total closure involves excluding all persons from the courtroom for some period while a partial closure involves excluding one or more, but not all, individuals for some period. *Judd v. Haley*, 250 F.3d 1308, 1316 (11th Cir. 2001).

"Both partial and total closures burden the defendant's constitutional rights," but "the impact of [a partial] closure is not as great, and not as deserving of such a rigorous level of constitutional scrutiny." *Id.* at 1315; *see also United States v. Yazzie*, 743 F.3d 1278, 1288 n.4 (9th Cir. 2014) ("Partial closure of a courtroom has a reduced impact on a defendant's rights.");

---

[1] This court previously addressed the issue of partial closures in *Drummond v. Houk*, 728 F.3d 520 (6th Cir. 2013), but that decision was subsequently vacated by the Supreme Court and remanded to this court for further consideration in light of *White v. Woodall*, 134 S. Ct. 1697 (2014). *See Robinson v. Drummond*, 134 S. Ct. 1934 (2014) (mem. op.).

*Woods v. Kuhlmann*, 977 F.2d 74, 76 (2d Cir. 1992) (stating that courts have "reasoned that a less stringent standard was justified because a partial closure does not implicate the same secrecy and fairness concerns that a total closure does"). Accordingly, lower courts have applied a more lenient standard where only a partial closure is challenged.

All federal courts of appeals that have distinguished between partial closures and total closures modify the *Waller* test so that the "overriding interest" requirement is replaced by requiring a showing of a "substantial reason" for a partial closure, but the other three factors remain the same. *See, e.g.*, *Bucci v. United States*, 662 F.3d 18, 23 (1st Cir. 2011) (explaining that the First Circuit and other circuits only require a "substantial" interest rather than a "compelling" one in partial closure cases); *United States v. Osborne*, 68 F.3d 94, 98–99 & n.12 (5th Cir. 1995) (adopting the "substantial reason" test for partial closures and noting that the Second, Eighth, Ninth, Tenth, and Eleventh Circuits have done the same). Thus, under the modified *Waller* test applied by those courts, (1) a party seeking a partial closure of the courtroom during proceedings must show a "substantial reason" for doing so that is likely to be prejudiced if no closure occurs; (2) the closure must be no broader than necessary or must be "narrowly tailored"; (3) the trial court must consider reasonable alternatives to closing the proceeding; and (4) the trial court must make findings adequate to support the closure.

We agree with our sister circuits and adopt this modified *Waller* test to assess whether a criminal defendant's Sixth Amendment right to a public trial is violated when a district court bars some, but not all, spectators from the courtroom during the proceedings.

   2.  *Analysis*

The first question posed by the modified *Waller* test is whether there is a substantial reason for partially closing the courtroom—one that is likely to be prejudiced if no closure occurs. We have noted that other "courts have held that the need to protect a witness from intimidation justifies closure of the courtroom." *Nolan v. Money*, 534 F. App'x 373, 380 (6th Cir. 2013) (complete closure); *see also Eisner*, 533 F.2d at 993–94 (concluding that a witness's fear of testifying is a proper basis for excluding all spectators except the press). In particular, courts consistently hold that ensuring witness safety and preventing intimidation constitutes a substantial reason to justify the partial closure of the courtroom. *See, e.g.*, *Thompson*, 713 F.3d

at 396 ("The government's interest in protecting its witness and the witness's concern for his own safety justify the partial closing in this case."); *United States v. Addison*, 708 F.3d 1181, 1187 (10th Cir. 2013) ("witness intimidation . . . alone is substantial"); *Woods*, 977 F.2d at 77 (concluding that protecting a witness from perceived threats constitutes a "substantial reason"); *see also Presley*, 558 U.S. at 215 (holding that "safety concerns" may warrant closing a courtroom during voir dire). Unsurprisingly, courts have also recognized that the need to protect the safety of witnesses and to prevent intimidation satisfies the higher "overriding interest" requirement in the standard *Waller* test. *See, e.g., English v. Artuz*, 164 F.3d 105, 108–09 (2d Cir. 1998).

Here, the government expressed concern to the district court that Nixon could be intimidated by the presence of the three co-defendants in the courtroom, and the district court agreed that Nixon could feel "threatened or intimidated." The district court therefore identified a substantial reason to grant a partial closure of the courtroom, but never concluded that the interest being protected was "likely to be prejudiced[.]" *See Waller*, 467 U.S. at 48. Instead, the district court mistakenly stated that it had discretion to exclude persons from the courtroom "if there is *any possibility* that [their presence] would be intimidating or possibly if it would influence a witness's testimony." (Emphasis added.) The district court therefore did not reach the conclusion necessary to satisfy the first prong of the modified *Waller* test.

We also observe that the closure failed the fourth prong—which requires a district court to make findings that are "adequate to support the closure" and "specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* at 45, 48 (quoting *Press-Enter.*, 464 U.S. at 510). The district court made no findings whatsoever. Of course, as the Fourth Circuit recognized, *Waller* "prescribed no particular format to which a trial judge must adhere to satisfy the findings requirement." *Bell v. Jarvis*, 236 F.3d 149, 172 (4th Cir. 2000). But here, the district court made no attempt to ask Nixon any questions at all (*in camera*, if necessary) given the paucity of information offered by the government. Nor did the district court question the government or other witnesses about relevant facts, such as by asking the government to articulate the supposedly "disparaging" comments about Nixon or confirming whether the government's claims were true. Questions along those lines might have led to

information that could have justified a partial closure. But the district court asked no questions at all.

As a result, the record was not "adequate to support the closure" because it remains unclear how the "disparaging," but still non-threatening, comments would likely intimidate Nixon. Furthermore, the record does not indicate the basis for excluding the three co-defendants from the courtroom since the government had not established that they made or prompted any of those statements. We do not doubt that subtle or indirect forms of witness intimidation occur, but a vague assertion that "disparaging things" were said by unidentified individuals cannot suffice to close a courtroom to members of the public during a criminal trial. Indeed, the prosecutor's comments during the colloquy—"I haven't talked to [Nixon] about it. I haven't told him about it[.]"—strongly suggest that Nixon himself never indicated that he felt threatened or intimidated by the three co-defendants; rather, as it conceded, the prosecutor was merely "concerned" that Nixon "*might* be" threatened or intimidated. That is insufficient to avoid reversal under *Waller*.

This is not a case in which "specific findings by the district court are not necessary [because] we can glean sufficient support for a partial temporary closure from the record." *United States v. Farmer*, 32 F.3d 369, 371 (8th Cir. 1994). Rather, the closure order was not "properly entered" since the district court did not articulate any facts supporting its decision and simply relied on the government's assertions—assertions that would have been insufficient to support a partial closure even if true—and its erroneous understanding of its discretion to exclude the public from the courtroom. In doing so, the district court abused its discretion and violated Simmons's Sixth Amendment right to a public trial.

### III. CONCLUSION

Because the district court did not conclude that Nixon's three co-defendants were likely to intimidate him or make factual findings that adequately supported its decision to exclude those three co-defendants from the courtroom during Nixon's testimony, it violated Simmons's Sixth Amendment right to a public trial. And because such a violation constitutes a structural error, we vacate the judgment of conviction and remand this case for a new trial.