The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 10, 2019

## 2019COA1

## No. 14CA1384, *People v. Irving* — Constitutional Law — Sixth Amendment — Speedy and Public Trial

At the defendant's trial, the prosecution asked the court to exclude defendant's mother from the courtroom during the testimony of the defendant's former girlfriend. According to the prosecution, at the time of the offense, nearly four years earlier, the defendant's mother had urged the girlfriend not to cooperate with police. Without determining that the girlfriend had a fear of testifying while the mother was present or making other required findings under *Waller v. Georgia*, 467 U.S. 39 (1984), the court granted the prosecution's request.

The division concludes that the need to prevent witness intimidation is an overriding interest that can justify closure of the courtroom under certain circumstances. However, the proponent of

a courtroom closure must demonstrate not only an overriding interest but also a substantial probability that the identified interest will be prejudiced by an open courtroom. Here, the trial court failed to make any finding that the interest in preventing witness intimidation would be prejudiced unless the defendant's mother was excluded from the courtroom during the girlfriend's testimony. Nor does the record support such a finding.

Accordingly, the division concludes that the court erred in partially closing the courtroom. And because the error is structural, the division reverses the defendant's convictions and remands for a new trial.

COLORADO COURT OF APPEALS                                    **2019COA1**

Court of Appeals No. 14CA1384
Arapahoe County District Court No. 11CR1958
Honorable Elizabeth Beebe Volz, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

De'Twan Clayton Irving,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE HARRIS
Webb and Welling, JJ., concur

Announced January 10, 2019

Philip J. Weiser, Attorney General, Rebecca A. Adams, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Lynn Noesner, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, De'Twan Clayton Irving, a member of the Rollin 60s branch of the Crips gang, was convicted of second degree murder and conspiracy to commit murder after he killed the victim during a gang-related dispute.

¶ 2     Based on the prosecutor's allegations of witness intimidation, the trial court partially closed the courtroom during the testimony of two witnesses, one of whom was Irving's former girlfriend, and closed it entirely during the testimony of a third witness.  Irving contends that the closures violated his constitutional right to a public trial.

¶ 3     Because we agree that the court erred in excluding Irving's mother from the courtroom during the testimony of Irving's girlfriend, we need not consider the propriety of the other closures. And because the error is structural, we must reverse Irving's convictions and remand for a new trial.

## I.     Right to a Public Trial

### A.    Background Facts

¶ 4     According to the prosecution's evidence, in September 2010, Irving's then girlfriend drove him and a few of his fellow gang members to an apartment complex where Irving shot the victim in

retaliation for the victim's earlier altercation with one of the gang members.

¶ 5     Irving was charged with first degree murder and conspiracy to commit murder.  The case proceeded to trial in April 2014.  On the third day of trial, the prosecutor requested that the court partially close the courtroom during the testimony of three witnesses: Irving's former girlfriend, a jailhouse informant to whom Irving had made inculpatory statements, and Irving's codefendant who had agreed to testify against Irving pursuant to a plea agreement.

¶ 6     According to the prosecutor, he had received information the day before directly from the informant and the codefendant.  The informant told the prosecutor that Irving had made a throat-slashing gesture when the two had crossed paths in the courthouse the prior morning and, later that day, another inmate had told the informant that if he testified against Irving, a "hit" would be put out on him and his family.  As for the codefendant, he reported to the prosecutor that gang members had threatened him and his mother and sister.

¶ 7     But the alleged threats against Irving's former girlfriend had occurred years earlier.  The prosecutor told the court that in

January 2012, a gang member "directly threatened" the girlfriend at a gas station, "telling her that were she to testify," her "life would be in danger."[1] The prosecutor also told the court that "Mr. Irving's mother has made a documented statement to [the girlfriend] that [she] should not testify."

¶ 8    Defense counsel disputed that Irving's mother had ever threatened or intimidated the girlfriend. He explained that just after the crime, Irving's mother had advised the girlfriend not to speak to police because "nothing good" would come of it and, in fact, after speaking to police, the girlfriend was charged with first degree murder.

¶ 9    The prosecutor implied that all three witnesses were reluctant to testify based on the alleged threats. The court made no findings with respect to the girlfriend, announcing only that "the courtroom

---

[1] At trial, Irving's girlfriend described the encounter differently. She said that a former middle school classmate, who was now a Rollin 60s gang member, approached her at a gas station in 2012. He told her there was a "hit" out on her, but that he "was going to pretend like he didn't see [her]." The girlfriend did not testify that the classmate threatened her or advised her not to testify at a trial that would occur two years later. Her version of events suggests that the classmate was unwilling to harm the girlfriend, even though his gang had ordered a "hit."

will be closed for [the girlfriend]. With regard to Mr. Irving's mother because there was this specific interaction with [the girlfriend] and any member of the Rollin 60s gang that the People have identified, they will not be permitted to come into the courtroom."

### B. Standard of Review

¶ 10 A trial court's decision to close the courtroom presents a mixed question of fact and law. *People v. Hassen*, 2015 CO 49, ¶ 5. We defer to the trial court's findings of fact absent an abuse of discretion but review its legal conclusions de novo. *Id.*

¶ 11 The People concede preservation with respect to exclusion of Irving's mother from the courtroom.

### C. Legal Principles

¶ 12 The United States and Colorado Constitutions guarantee criminal defendants the right to a public trial. U.S. Const. amend. VI; Colo. Const. art. II, § 16. That right is "one created for the benefit of the defendant." *Waller v. Georgia*, 467 U.S. 39, 46 (1984) (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979)). Still, the right is not absolute. It may yield to competing interests, including the government's interest in inhibiting disclosure of sensitive information and the defendant's right to a fair trial. *Id.* at

4

45. The Supreme Court has cautioned, however, that "[s]uch circumstances will be rare," and that "the balance of interests must be struck with special care." *Id.*

¶ 13     In *Waller,* the Supreme Court articulated the criteria that must be satisfied in order to close the courtroom without violating the defendant's Sixth Amendment rights: (1) the party seeking to close the proceeding must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than necessary to protect that interest; (3) the trial court must consider reasonable alternatives to closing the proceeding; and (4) the trial court must make findings adequate to support the closure. *Hassen,* ¶ 9 (citing *Waller,* 467 U.S. at 48).

> D.     The Exclusion of Irving's Mother Violated His Sixth
> Amendment Right to a Public Trial

¶ 14     The People contend, and Irving does not appear to dispute, that the need to protect witnesses from intimidation constitutes an overriding interest.  The weight of authority supports that view. *See, e.g., United States v. Simmons,* 797 F.3d 409, 414 (6th Cir. 2015) ("Unsurprisingly, courts have also recognized that the need to protect the safety of witnesses and to prevent intimidation satisfies

the higher 'overriding interest' requirement in the standard *Waller* test."). However, the proponent of a courtroom closure must demonstrate not only an overriding interest but also "a *substantial probability* that the identified interest will be prejudiced by an open courtroom." *Hassen*, ¶ 12 (quoting *People v. Echevarria*, 989 N.E.2d 9, 15-16 (N.Y. 2013)).

¶ 15     Here, the prosecutor only cursorily suggested that the girlfriend was hesitant to testify, and he did not link her supposed hesitation to the statement the mother had made nearly four years earlier. The trial court made no attempt to confirm the suggestion, despite the paucity of information offered by the prosecutor.

¶ 16     Some minimal inquiry would likely have yielded contrary information. The girlfriend testified about the mother's statements at trial, and her testimony undermined the prosecutor's representations.

¶ 17     The girlfriend did not say that Irving's mother had ever threatened her or had even suggested that she not testify at trial. Rather, she recounted that shortly after the crime in 2010, Irving and his mother told her "[t]hat the police aren't no good," and that she "really shouldn't talk to them" because "[t]hey really aren't

going to do anything for [her]." She agreed that their "pressure" was a factor in her decision not to immediately cooperate with police. But according to her testimony, the primary reason she did not cooperate with police until a year after the crime was that she did not want Irving "to get in trouble" and she was scared that she "was going to go to prison." And in any event, the girlfriend ultimately disregarded the mother's advice not to speak to the police and eventually cooperated with the prosecution.

¶ 18 The girlfriend did say that she was reluctant to testify, but her reluctance was not based on the alleged threats. When the prosecutor asked the girlfriend whether testifying that day was "difficult" for her, she acknowledged that it was — not because she felt intimidated, but because "[i]t just brings back a lot of memories."

¶ 19 Under these circumstances, where the alleged intimidation was based on a single, ambiguous, four-year-old statement that the girlfriend later disregarded, the court should not have simply accepted the "unsubstantiated statements of the prosecutor" that she was reluctant to testify in front of the mother. *Guzman v. Scully*, 80 F.3d 772, 775-76 (2d Cir. 1996) ("Since no testimony was

7

elicited from the witness alleged to be feeling intimidated, there was no ascertainment that the [interest] advanced by the prosecutor was . . . 'likely to be prejudiced.'" (quoting *Waller*, 467 U.S. at 48)); *see also Simmons*, 797 F.3d at 415 (where witness did not indicate that he felt threatened or intimidated by three codefendants, nature of the "threat" was vague, and court made no effort to question witness, court could not have found that overriding interest was likely to be prejudiced and therefore partial closure violated the defendant's constitutional rights); *cf. Woods v. Kuhlmann*, 977 F.2d 74, 77 (2d Cir. 1992) (partial closure did not violate the defendant's rights where witness told judge that she was reluctant to testify because she feared for her safety); *Commonwealth v. Martin*, 653 N.E.2d 603, 605 n.4, 606 (Mass. App. Ct. 1995) (partial closure did not violate the defendant's rights where witness testified during hearing that some of her previous testimony was not truthful because certain spectators, including members of the defendant's family, were "scaring [her] from testifying").

¶ 20    While the right to a public trial may yield to an interest in protecting witnesses from injury or intimidation, "such an encroachment on a defendant's rights requires, *at a minimum*, that

the trial court first determine whether or not the threat of injury or intimidation in fact exists." *State v. Tucker*, 290 P.3d 1248, 1259 (Ariz. Ct. App. 2012) (quoting *Commonwealth v. Penn*, 562 A.2d 833, 839 (Pa. Super. Ct. 1989)). This principle applies with even greater force when it comes to excluding members of the defendant's family. The Supreme Court has noted a special concern for accommodating the attendance at trial of a defendant's family members. *See In re Oliver*, 333 U.S. 257, 271-72 (1948); *see also Vidal v. Williams*, 31 F.3d 67, 69 (2d Cir. 1994) (granting habeas relief where court erroneously excluded the defendant's parents from courtroom during testimony of one police officer).

¶ 21 The trial court may have identified an overriding interest, but it never found that there was a substantial probability that the interest would be prejudiced absent a partial closure. Thus, the trial court did not make the finding necessary to satisfy the first element of the *Waller* test. *See Simmons*, 797 F.3d at 415.

¶ 22 Indeed, the court did not make any specific findings with respect to the partial closure during the girlfriend's testimony, instead simply stating, "So the courtroom will be closed for [the girlfriend]" based on the mother's "specific interaction" with the

girlfriend. *Waller*'s fourth element requires the trial court to make findings that are "adequate to support the closure" and "specific enough that a reviewing court can determine whether the closure order was properly entered." *Waller*, 467 U.S. at 45, 48 (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). The court's ruling does not satisfy this requirement.

¶ 23 Although the People suggested we remand for additional findings to support the court's total closure order, they did not request a remand with respect to the partial closure orders. In any event, we would have rejected that suggestion as it relates to the order excluding Irving's mother. For one thing, "post hoc" rationales for closures cannot "satisfy the deficiencies in the trial court's record." *Id.* at 49 n.8. But also, on this record, the trial court could not make a finding that the girlfriend was too intimidated to testify absent exclusion of Irving's mother. The court did not ask the girlfriend any questions, and the girlfriend's testimony would not support such a finding.

¶ 24 When the trial court erroneously deprives the defendant of his public trial right, the error is structural. *Hassen*, ¶ 7. Structural errors are not amenable to harmless error analysis because such

errors affect the framework within which the trial proceeds and are not errors in the trial process itself.  *Id.*  These errors "require automatic reversal without individualized analysis of how the error impairs the reliability of the judgment of conviction."  *People v. Flockhart*, 2013 CO 42, ¶ 17.  Accordingly, we must reverse Irving's convictions and remand for a new trial.[2]

## II.     Conclusion

¶ 25     The judgment is reversed.  We remand the case to the trial court for a new trial.

JUDGE WEBB and JUDGE WELLING concur.

---

[2] The People have not argued that any single closure would be so trivial as to not implicate Irving's Sixth Amendment rights.  *See People v. Hassen*, 2015 CO 49, ¶ 17 (declining to decide whether to adopt the Second Circuit's "triviality framework" for courtroom closure cases).  We decline to raise the issue sua sponte.