ROBIN F. WYNNE, Associate Justice
Tonisha Mitchell appeals following her conviction for first-degree murder in the Craighead County Circuit Court, for which she was sentenced to life imprisonment.[1]
*839 She raises the following points on appeal: (1) the trial court violated her fundamental right to a public trial by closing the courtroom to the public during the testimony of State's witness Vikkesha Menifee; (2) the trial court erred in denying trial counsel's motion to withdraw and her motion to change attorneys; and (3) the trial court erred in denying her motion for new trial based on jurors seeing her escorted into the courtroom by bailiffs while she was bound by arm restraints just prior to jury selection. We find merit in her first point, and we therefore reverse and remand for a new trial.
I. Background
On May 25, 2015, Nelson McCullough was shot and killed at his house in Jonesboro. Appellant was charged with first-degree murder in McCullough's death, and appellant's jury trial was held on June 20-23, 2017. Ladarius Lee testified that he and Antonio Watson, who was deceased at the time of trial, rode with appellant in a borrowed silver Dodge Charger to the victim's house to purchase marijuana. While Lee was inside, appellant came in and shot McCullough without saying anything. Watson fled, and Lee and appellant drove away and immediately exchanged the Charger for appellant's vehicle. In addition to Lee's testimony, the victim's girlfriend testified that she had identified Lee as the person who knocked on the door the day of the shooting; the owner of the Charger testified regarding appellant borrowing the vehicle; and Vikkesha Menifee testified that appellant told her she had shot the victim. Appellant was found guilty of first-degree murder and sentenced to life imprisonment. She filed a pro se motion for new trial and her appointed counsel filed an amended motion for new trial because members of the jury panel had allegedly seen appellant in restraints prior to voir dire. Following a hearing, the circuit court denied the motion. This appeal followed.
II. Public Trial
For her first point on appeal, appellant argues that the closure of the courtroom during the testimony of State's witness Vikkesha Menifee violated her constitutional right to a public trial. The issue arose in the following bench conference:
[ DEPUTY PROSECUTOR ]: Your Honor, for this next witness, I would ask the Court to close the courtroom and exclude any of the audience from it.
THE COURT : Who is the witness?
[ DEPUTY PROSECUTOR ]: Her name is Vikkesha Menifee. She is the aunt of the defendant, and we have what we believe is credible evidence that certain members of the defendant's family have reached out in an effort to intimidate her to prevent her from testifying, and so we are going to ask that the courtroom be closed and all of the gallery excluded during her testimony.
THE COURT : Well, of course the defendant would remain.
[ DEPUTY PROSECUTOR ]: Of course.
[ DEFENSE COUNSEL ]: Your Honor, I would object to that. She has family members here who wants to - this is a public proceeding, and there is no reason to close it for testimony.
THE COURT : Well, the Court has to weigh the rights of the public with possible harm and I don't see any harm in the excluding of the public for this phase of the trial only in light of what thus far is unsubstantiated claim of possible bodily harm in the offing of the witness and over the objection, I'm going to permit the courtroom to be closed and requesting it be closed for the testimony of this particular *840 witness as to all family members on both sides.
[ DEPUTY PROSECUTOR ]: Yes, sir, any of the audience except for members of either of Mr. Simes's staff or the Prosecution staff.
THE COURT : All right. Okay.
[Bench conference concludes.]
THE COURT : All right. Ladies and gentlemen, before this next witness is called, I'm going to ask that the courtroom be cleared of all persons who are here as spectators. The reporters may remain and court personnel may remain but the rest of you will need to remain outside until after this witness testifies so if you would escort them out.
Ms. Menifee proceeded to testify that she had a good relationship with appellant, who is her sister's daughter. Shortly after May 2015, appellant stayed with Menifee for a few days, and during that time appellant seemed worried. According to Menifee's testimony, during that time appellant confided in her about the shooting. Appellant told Menifee that she had accompanied Lee to the victim's house to purchase marijuana despite being "skeptical" about going because she and the victim had "bumped heads before." Appellant was waiting in the car when she heard them "exchange some words" and got out of the car to see what was going on. Menifee testified that appellant told her that the victim "drew a gun on her" and she shot him first. Significantly, there was no testimony regarding the alleged intimidation efforts that were the bases for the closure of the courtroom.
Both the Sixth Amendment to the United States Constitution and article 2, section 10 of the Arkansas Constitution guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." Regarding the right to a public trial, this court has previously stated:
We have recognized that "[t]he right to a public trial is one of the most important safeguards in the prosecution of persons accused of crime." Sirratt v. State , 240 Ark. 47, 53, 398 S.W.2d 63, 66 (1966) (quoting People v. Murray , [89 Mich. 276] 50 N.W. 995, 997 (Mich. 1891) ). "The right to a public trial has long been viewed as 'a safeguard against any attempt to employ our courts as instruments of persecution.' " United States v. Thunder , 438 F.3d 866 (8th Cir. 2006) (quoting In re Oliver , 333 U.S. 257, 270 [68 S.Ct. 499, 92 L.Ed. 682] (1948) ). "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions[.]" Waller v. Georgia , 467 U.S. 39, 46 [104 S.Ct. 2210, 81 L.Ed.2d 31] (1984) (quoting In re Oliver , 333 U.S. at 270, n.25 [68 S.Ct. 499] ). "The importance we as a Nation attach to the public trial is reflected both in its deep roots in the English common law and in its seemingly universal recognition in this country since the earliest of times." Gannett Co. v. DePasquale , 443 U.S. 368, 414 [99 S.Ct. 2898, 61 L.Ed.2d 608] (1979) (Blackmun, J., concurring in part and dissenting in part). As enunciated by the Waller Court, the values advanced by the fundamental right of a public trial are (1) to ensure a fair trial; (2) to remind the prosecutor and the judge of their responsibility to the accused and the importance of their functions; (3) to encourage witnesses to come forward; and (4) to discourage perjury.
Schnarr v. State , 2017 Ark. 10, at 11-12, 2017 WL 374727.
*841 The right to a public trial is not absolute, however. In Waller v. Georgia , the United States Supreme Court adopted the following test for determining when the right of an accused to a public trial may give way to other rights or interests, i.e., when the closure of a courtroom is justified in a criminal trial:
[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure.
Waller v. Georgia , 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). The issue presented in this case is whether the Waller test was met.[2]
We first address the State's contention that appellant has changed her argument on appeal. It is axiomatic that a party cannot change the grounds for an objection on appeal, but is bound by the scope and nature of the arguments made at trial. E.g. , Mayes v. State , 351 Ark. 26, 29, 89 S.W.3d 926, 928 (2002). The State contends that appellant's objection at trial was aimed at the right of her family, as members of the public, to an open trial-not appellant's personal right to a public trial. The State correctly notes that, separate from the accused's Sixth Amendment right to a public trial, the press and the general public have a constitutional right of access to criminal trials under the First Amendment, made applicable to the states through the Fourteenth Amendment. See Presley v. Georgia , 558 U.S. 209, 212, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010). Here, appellant's counsel clearly and timely objected to the prosecution's request to close the courtroom, stating that the trial was a public proceeding. Counsel noted the presence of family members and argued that there was no reason to close the courtroom. While counsel did not specifically state the constitutional provisions on which he based his objection, counsel's reference to the trial being a "public proceeding" was sufficient to apprise the trial court of the nature of the objection and to preserve the argument for appellate review. We simply do not agree with the State's argument that defense counsel, who was charged with representing appellant in her criminal trial, was asserting the rights of the public rather than those of his client when he objected to the closure of the courtroom. Therefore, we hold that appellant's argument is preserved for our review on appeal.
*842 Turning now to the merits, appellant argues that none of the requirements of Waller have been satisfied in this case. The crux of the issue is whether a mere allegation of witness intimidation, without more, is a sufficient basis for closing a courtroom.[3] Other jurisdictions have held that closure of a courtroom for the testimony of a witness who had allegedly been threatened or intimidated, without proper application of the Waller test, is reversible error. E.g. , Com. v. Penn , 386 Pa.Super. 133, 562 A.2d 833, 838 (1989) ("[A] bald assertion of alleged intimidation does not justify the kind of encroachment on a defendant's Sixth Amendment right to a public trial which clearing the courtroom for a witness' testimony entails."); State v. Mahkuk , 736 N.W.2d 675 (Minn. 2007) (prosecutor's statements regarding intimidation and threats made against witnesses were inadequate to support closure of courtroom without evidence in the record and adequate findings by the trial court). The present case is analogous to Guzman v. Scully , 80 F.3d 772 (2d Cir. 1996), in which the trial court excluded four individuals from the cross-examination of a prosecution witness based solely on representations by the prosecution that their presence was intimidating to the witness. The United States Court of Appeals for the Second Circuit wrote:
Under the circumstances presented in this case, the trial court's partial closure of its courtroom violated Guzman's right to a public trial. This constitutional infirmity stems primarily from the fact that the trial court relied on the unsubstantiated statements of the prosecutor, rather than conducting an inquiry of the prosecution witness on whose behalf the closure request was made. This resulted in a violation of the first Waller criterion and consequently led to noncompliance with the other criteria as well.
Guzman , 80 F.3d at 775. Similarly, in the case at bar no record was developed before the trial court to demonstrate that Menifee was actually intimidated or threatened, or by whom. There was no evidence presented on which the trial court could have determined (1) that there was an overriding interest likely to be prejudiced, (2) how broad any closure might need to be, or (3) what reasonable alternatives to closure might exist. It naturally follows that the trial court did not make findings necessary to support the closure.
On this record, we hold that appellant's constitutional right to a public trial was violated. Our analysis does not require a demonstration of actual prejudice, as both this court and the Supreme Court of the United States have held that a showing of prejudice is not necessary when an appellant's right to a public trial has been violated. See Schnarr , 2017 Ark. 10, at 16. Consequently, we reverse and remand for a new trial. We do not address the remaining two points on appeal because they are not likely to arise on retrial.
Reversed and remanded.

Thus, this appeal is before us pursuant to Arkansas Supreme Court Rule 1-2(a)(2) (2018).

There is some suggestion of a less than complete closure by the trial court's statement that "[t]he reporters may remain," and partial closures have typically been treated differently than complete closures. See United States v. Simmons , 797 F.3d 409, 414 (6th Cir. 2015) ("All federal courts of appeals that have distinguished between partial closures and total closures modify the Waller test so that the "overriding interest" requirement is replaced by requiring a showing of a "substantial reason" for a partial closure, but the other three factors remain the same."); State v. Uhre , 2019 S.D. 8, ¶ 19, 922 N.W.2d 789 ("[W]e have modified the first Waller factor by allowing a partial closure to be supported by a "substantial reason" rather than the more stringent "overriding interest" described by Waller for complete courtroom closures."). But cf. State v. Turrietta , 308 P.3d 964, 970 (N.M. 2013) (adopting the "overriding interest" standard as discussed by the Supreme Court in Waller for any type of courtroom closure). Here, however, the parties brief the case as though there was a complete closure of the courtroom, and our conclusion is the same regardless of whether Waller 's "overriding interest" requirement or a less stringent "substantial reason" standard is applied. It is unnecessary to decide in the present case whether the closure of the court room was complete or partial, or whether a less stringent standard should be applied to partial closures.

Of course, we do not mean to suggest that protecting a witness's safety could not constitute an overriding interest or a substantial reason for closing a courtroom.